## MORSE *against* WELTON :

### IN ERROR.

A father may, by agreement with his minor son, relinquish to him the right which he has to his services; and the father will be precluded from suing for the services of such son, performed within the period embraced by the agreement.

In such case, notice from the father to the party employing the son, not to pay the son's wages to him, but to the father, will make no difference.

This was an action of book debt, brought by *Welton* against *Morse*, and tried, on the general issue, in the county court of *New-Haven* county, *November* term, 1825.

The plaintiff's claim was for the services of his son *Leonard Welton*, for the defendant, at divers times between the 1st of *April*, 1824, and the 1st of *April*, 1825. It was agreed, by the parties, that *Leonard*, during this period, was under the age of twenty-one years, which was known to the defendant ; and that at different times within this period, he contracted with the de-

HARVARD LAW LIBRARY

*New-Haven,*
*November,*
*1827.*

*Morse*
*v.*
*Welton.*

fendant to labour, and did in fact labour, for him, six months, at ten dollars *per* month, one month at eight dollars, and four months, at seven dollars *per* month. The defendant claimed to have proved, that the plaintiff, in consideration of fifty dollars, to be paid him by his son, had sold to the latter his time, during the period in question, and had agreed, that his son might, during that period, contract, on his own account, with the defendant or any one else, to labour for wages, and might receive and enjoy the fruits of his labour; and that the son did in fact contract with the defendant, on his own account, without the privity of the plaintiff, to render the services in question, and to receive the wages. On the other hand, the plaintiff claimed, that the contracts for labour, made by his son with the defendant, were made for the plaintiff's benefit.

The plaintiff further claimed, that after *Leonard* had laboured six months under his contract with the defendant, and had earned thereby the sum of sixty dollars, the plaintiff gave notice to the defendant not to pay *Leonard's* wages to him.

The court instructed the jury, that a waiver, by a father, to the future services of his minor son, is not binding, except by way of licence; and that if they should find, that the agreement claimed by the defendant, was made between the plaintiff and his son, the father might, at any time, revoke that agreement; and if the plaintiff had, at any time, given notice to the defendant not to pay the son his wages for his services rendered, or to be rendered, and the defendant had afterwards paid the son, such payment would not avail him, but the plaintiff might recover all the wages unpaid at the time of such notice. But, if prior to such notice, the defendant had paid the son in full, *that* would be a defence.

The defendant also contended, that if the contract was made in the manner claimed by him, the action of book debt would not lie. The court instructed the jury, that book debt was the proper form of action; a contract made with a minor son, being, in contemplation of law, a contract made with the father.

The jury returned a verdict for the plaintiff, with 68 dollars, 78 cents, damages; and the defendant, having filed a bill of exceptions to the charge, brought a writ of error, which was reserved, in the superior court, for the advice of this Court.

*R. S. Baldwin,* and *Kimberly,* for the plaintiff in error, contended, 1. That the right which a father has to the services of

his minor son, arises merely from the obligation of the father to support and educate such son. 1 *Bla. Comm.* 453. *Benson* v. *Remington*, 2 *Mass. Rep.* 113.

2. That a contract, by which the father relinquishes to his minor son his right to his son's services, for a future definite period, is a valid contract, binding on the father. This is perfectly consistent with the principle, on which the general right of the father is founded; and it is opposed to no principles of public policy. The father does not thereby discharge himself from his obligation to the public, in relation to his child; nor does he thereby relinquish his parental charge or controul over his child. If the contract is in fraud of the father's creditors, it will, undoubtedly, be void as to them; but in this case, the rights of such creditors are not concerned. *Jenney* v. *Alden*, 12 *Mass. Rep.* 375.

3. That where the son, under authority from his father, renders services for another, on his own account, the avails of those services are the son's, and not the father's: the son can sustain an action for them, and the father cannot. *Jenney* v. *Alden*, 12 *Mass. Rep.* 375. *Nightingale* v. *Withington*, 15 *Mass. Rep.* 272. *Whiting* v. *Earle* & al. 3 *Pick.* 201. *Burlingame* v. *Burlingame*, 7 *Cowen* 92.

4. That the father could not revoke the power of the son, during the stipulated term. This results necessarily from the validity of the contract between the father and the son.

5. That the action of book debt will not lie, in this case. There was no *privity* between these parties. If the father has any right of action, it arises by implication of law. The facts ought to be stated specially, in an action on the case. No right of charge existed in favour of the father, at the time the services were rendered. *Swift's Ev.* 33.

*N. Smith* and *Townsend,* for the defendant in error, contended, 1. That the contract between the father and the son, by which the former sold the latter his time, for a year, and permitted him to receive and enjoy his wages, was invalid, being opposed to principles of sound policy, and to established rules of law. Minors are to be educated, and to be brought up to some regular business; and the law confers upon the father the controul of the son, in these particulars, not for his own profit, but for the benefit of the son and of the public. At common law, a father could not bind his son as an apprentice, except by

*New-Haven,*
*November,*
*1827*

Morse
*v.*
Welton.

deed, with the son's assent, manifested therein. *Reeve's Dom. Rel.* 341.   And our statute is the same.   *Stat.* 318.

It is a principle that pervades our system of jurisprudence, that every minor shall be under the care and controul of a parent, guardian or master.   This principle has been directly asserted, or incidentally recognized, by the legislature, in numerous instances.   *Stat.* 107. 262. 319 180. *tit.* 25. *s.* 3. The law does not intend, that minors shall become vagabonds in society.

The contract in question is invalid, because it is inconsistent with the relation of father and son.   This relation, and the rights and duties resulting from it, the law determines ;   which it is not in the power of the parties to change.   In *Adams* & al. v. *Oaks,* 20 *Johns. Rep.* 282. 285. it appeared, that when the son was about seventeen years old, his father executed an instrument in writing to him, whereby, for the consideration of fifty dollars, he released his son from all claim to his future services, and permitted him to work and contract for himself, and go where he pleased, relinquishing all parental rights and controul over him ; and the court considered such contract as absurd, and not capable of having any effect.—A master cannot assign his apprentice or servant; because he has a special trust. The law and the God of nature have committed a still higher trust to the father.   He cannot barter it away.

2. That if the son had a legal and valid authority to labour abroad, on his own account, and to receive his own earnings, still the father could revoke that authority ; after which the father would be entitled to the earnings of the son, in the same manner as though no such authority had been given, except as against third persons without notice.

3. That book debt was the proper form of action.   The subject matter, *viz.* wages, is certainly proper for book debt. If the son may be considered as the father's agent, there is obviously no more difficulty in the father's sustaining book debt, than if he had performed the services himself.   If not, still book debt is a proper remedy to enfore a right arising from a legal obligation.   See 3 *Day* 37. 4 *Day* 105. 2 *Conn. Rep.* 215.

PETERS, J. By the common law, a father is entitled to the services of his minor children.   This right is bottomed on his duty to maintain, protect and educate them.   But this right, and this duty, may be transferred to another ;   (1 *Bla. Comm.*

472. 1 *Swift's Dig.* 41. 61.) and may be relinquished to a child; and the earnings of the child can no more be taken away by a father, than a gift *delivered.*   Such a gift may be void against creditors, but it is valid against the giver.   " The law," says Ch. J. *Parsons,* in *Remson* v. *Remington,* 2 *Mass. Rep.* 113. 115. " is very well settled, that parents are under obligations to support their children, and that they are entitled to their earnings.   It is true, parents may transfer this right, and authorize those who employ their children, to pay them their own earnings."   So in *Jenney* v. *Alden,* 12 *Mass. Rep.* 375. 378. where a father agreed with his minor son, that he should have the benefit of his earnings, which, being received by the father, were vested in land, and a deed was taken in the son's name ; " this agreement," said the court, " was a lawful one, and the money received by the father from the earnings of the son, may be equitably considered as the money of the son."   In *Whiting* v. *Earle* & al. 3 *Pick.* 201, 2.   where a minor son made a contract for his services, on his own account, and the father knew it, and made no objection ; it was said, by *Parker,* Ch. J. in giving the opinion of the court, "that although the general principle is clear, that a father is entitled to the earnings of a son, while under age, yet the court thought it equally clear, that he might transfer to the son a right to receive them.   This is necessary for the encouragement of young men ;  and it is often convenient for a father wishing to be relieved from the burthen of supporting his son, to allow him, in this manner, to support himself.   Where such a contract is entered into, without any fraud, for the advantage of the son, on the principles of common justice, and according to decided cases, he is entitled to the profits of his own labour.   We go as far as to say, that where a minor son makes a contract for his services, on his own account, and the father knows of it, and makes no objection, there is an implied assent that the son shall have his earnings."   See *Burlingame* v. *Burlingame,* 7 *Cowen* 92.

As the cause of the plaintiff below has no merits, the form of action is immaterial.

I advise that the judgment of the county court be reversed.

The other judges were of the same opinion, except BRAIN-ARD, J., who was absent.

Judgment to be reversed.