*Litchfield,*
June, 1852.
_____

Watson
*v.*
Cleveland &
ux.

</div>

------❖------

The town of TORRINGTON *against* The town of NORWICH.

Where a mother, who has since acquired a settlement, by commorancy, in the town of *N*, continued to reside in that town, with five minor children of hers in her family, of whom *C* was one ; *C* remained with her, as part of her family, and was supported by her, and subject to her controul, until *April,* 1833, (which was before she had acquired a settlement in *N*,) when his brothers having all left her, and she, being unable to find employment for her children, by reason of the stoppage of the factories, said to *C*, who was still a minor, that he might go and take care of himself, and have his time and his earnings ; to which *C* assented ; and it was so mutually agreed between them by parol, no pecuniary consideration being paid or received, by either of the parties ; *C* thereupon left his mother, and found employment, by different persons, in different places, returning to his mother in *N*, in two instances, and boarding with her through the winter, and paying his board, for the purpose of attending school ; in an action for the support of *C's* wife, it was held, 1. that the agreement between *C* and his mother, was as valid and effectual as if it had been in writing ; but 2. that whatever else might be its effect as between the parent and child, it did not release the child from the authority and controul of the parent, nor the parent from the duty of maintaining and protecting the child ; 3. that consequently, it wrought no such emancipation as prevented *C* from deriving from his mother her settlement in *N*.

THIS was an action of *assumpsit*, to recover disbursements by the plaintiffs, for the support of *Sarah Daniels,* alleged to be a pauper, having a settlement in the town of *Norwich*. The defendants pleaded the general issue ; and the cause was tried at *Litchfield*, *February* term, 1852. The jury found a special verdict in which the material facts in the case are stated. After finding the plaintiff's disbursements for the necessary support of *Sarah Daniels,* amounting to one hundred and fifty-one dollars, and notice thereof to the

town of *Norwich*, the verdict found the following facts in relation to her settlement. In *April*, 1839, she was married to *Caleb Daniels*, and thereby acquired the settlement of her husband; her previous settlement having been in the town of *Torrington*. *Caleb Daniels*, the husband, was born in the town of *Griswold* in this state, on the 15th of *December*, 1816. His parents afterwards removed to the town of *North Stonington*, where his father died. His mother, having thus become a widow, with five minor children of hers, of which *Caleb* was one, removed, on the 1st of *May*, 1829, to the town of *Norwich*, where she continued to reside until the summer of 1839, and, by virtue of such residence, acquired a settlement in that town, at the expiration of six years from the time of such removal. Her son *Caleb* continued to reside with her, as a part of her family, and was supported by her, and subject to her controul, until *April*, 1833, when his brothers having all left her, and she, being unable to find employment for her family, by reason of the stoppage of the factories, said to him, that he might go, and take care of himself, and have his time and his earnings; to which he assented, and it was so mutually agreed between them; but no such agreement was made in writing; nor was any consideration paid or received, by either party. He then went to *Lebanon*, and agreed with his brother, who lived in that town, to work for him six months; and continued to live with and work for him, during that period. On the 1st of *October* following, he returned to his mother in *Norwich*, and agreed with her, to board him through the winter, that he might attend school. He continued with her, boarding with her, paying her for his board, and attending school, until the 1st of *April*, 1834, when he went back to *Lebanon*, and hired himself to a man living there, for the period of seven months; and continued to live with and work for him, during that period. On the 1st of *November*, 1834, he again returned to his mother in *Norwich*, and agreed with her to board him, that he might attend school the ensuing winter. In the spring of 1835, he hired himself to a man living in *Norwich*, for one year; and continued to work for him, and other individuals in *Norwich*, until the 1st of *January*, 1836, when he went to *Colchester*, and soon afterwards to *Torrington*, where he remained until he was married. From the time he

returned from *Lebanon* in *November*, 1834, until he finally left *Norwich*, he continued to board with his mother, and also worked for different individuals in *Norwich*, except while attending school in the winter after his return, and paid her for his board, in pursuance of his agreement with her to do so; she, at the same time, keeping other boarders. He is still living; and has never acquired any settlement since he left the town of *Norwich*, as above stated.

*Litchfield,*
June, 1852.

Torrington
*v.*
Norwich.

The case, embracing these facts, was reserved for the advice of this court, as to what judgment should be rendered thereon.

*Woodruff* and *Barbour*, for the plaintiffs, contended, 1. That the settlement of *Caleb Daniels* was in *Norwich*. His mother acquired a settlement in that town, during his minority; and he takes that settlement, notwithstanding his occasional absence. *Bozrah* v. *Stonington*, 4 *Conn. R.* 373. *Oxford* v. *Bethany*, 19 *Conn. R.* 229. *Hebron* v. *Colchester*, 5 *Day*, 169. *Dedham* v. *Natick*, 16 *Mass. R.* 135. *Great Barrington* v. *Tyringion*, 18 *Pick.* 264. 5 *N. Hamp.* 348.

2. That, in this case, *Caleb* was not emancipated in such a way as to prevent his deriving a settlement from his mother. The agreement between him and her might be an emancipation, so far as to give him a right to his wages, as against her. But it did not constitute an emancipation, such as affects the question of settlement. Residence out of the family, is no emancipation; nor working for others, at his pleasure, without her controul; nor the removal of the parent to a distance, leaving the child in the care of another until eighteen, to be treated as an adopted child; nor if the minor lived about, in several places, and the father refused to take care of him; nor if given away, at three years of age. *Bozrah* v. *Stonington*, 4 *Conn. R.* 373. *Sumner* v. *Sebec*, 3 *Greenl.* 223. *Clinton* v. *York*, 26 *Maine R.* 167. *Salisbury* v. *Orange*, 5 *N. Hamp.* 348.

3. That the arrangement between *Caleb* and his mother, was a *mere gift*, without consideration. She continued to have the *legal controul* of her son. He could not exonerate her from it. The policy of the law continues it until he is twenty-one. Before that period, there can be no emancipation, unless by marriage, or by contracting a relation perma-

nently excluding from parental controul. *Rex* v. *Wilmington*, 5 *B. & Ald.* 525. (7 *E. C. L.* 180.) *Rex* v. *Rotherfield Greys*, 1 *B. & Cres.* 345. (8 *E. C. L.* 95.) *Adams* v. *Oaks*, 20 *Johns. R.* 282.

4. That if, after 1833, *Caleb* was not acquiring a settlement in his mother's right, must he not have been in his own, and so, by adding the two terms, be settled in *Norwich*. *Adams* v. *Foster*, 20 *Johns. R.* 452.

*J. H. Hubbard*, for the defendant, contended, That *Caleb Daniels*, at the time of his marriage, was not settled in *Norwich*. In support of this position, the following considerations were urged.

In the first place, in *April*, 1833, long before his mother had acquired a settlement in *Norwich*, he, being then seventeen years of age, was emancipated, and thereby acquired new rights, inconsistent with the subsequent controul and authority of his mother. *Bouvier's L. Dict.* 509. *Rex* v. *Roach*, 6 *Term R.* 247. 2 *Sw. Dig.* 822, 3. *Bozrah* v. *Stonington*, 4 *Conn. R.* 373.

Secondly, the right which a parent has to the services of a minor son, arises merely from the obligation to furnish him support; and the contract in *April*, 1833, that the son should have his time and earnings, was a valid contract, and binding on the parent. 2 *Kent's Com.* 193. *Morse* v. *Welton*, 6 *Conn. R.* 547. *Whiting* v. *Earle*, 3 *Pick.* 201.

Thirdly, no rule of *policy* is opposed to such a contract. In this case, the agreement between the mother and her son, was well adapted to their condition: the parent being unable to procure employment for her children, in consequence of the stoppage of the factories, and the son being willing to separate from the family, and go in search of employment.

Fourthly, the place of *Caleb's* settlement, at this time, was the one acquired under his father; and that remained to him until he should gain a new one in his own right.

Fifthly, the separation of *Caleb* from his mother's family, in April, 1833, was made without any intention of his ever returning, and again becoming subject to his mother, or a part of her family.

Sixthly, his returning to *Norwich*, in the fall of 1833, and

again in the fall of 1834, and becoming a boarder in his
mother's house, for temporary periods, under a contract to
pay for such board, confirms the contract of emancipa-
tion.    When the mother surrendered her right to the servi-
ces of her son, she surrendered her authority and controul
over him.    The separation was voluntary, and intended to
be perpetual.

*Litchfield,*
June, 1852.

Torrington
*v.*
Norwich.

STORRS, J.    It being found, by the special verdict, in this
case, that the mother of *Caleb Daniels,* who was the husband
of *Sarah Daniels,* the pauper, for the expences of whose
support this action was brought, acquired a settlement in
*Norwich,* during the minority of said *Caleb,* it is conceded,
that said *Caleb* derived from his mother, and not having since
acquired a settlement elsewhere, still has, a settlement in
that town ; and that that town is consequently, the place of
the settlement of his wife, unless he was prevented from
deriving a settlement there from his mother, by virtue of the
agreement made between her and the said *Caleb,* during his
minority, and before she acquired such settlement, and of
his absence from her subsequent to and in pursuance of that
agreement.    That his mere absence from her, during that
period, independent of the terms and effect of that agree-
ment, would prevent his following or acquiring her settle-
ment, cannot be, and indeed has not been, claimed.    The
cases on this point are decisive and too familiar to require
citation.    The question of his settlement, therefore, depends
entirely on the effect of that agreement, which is claimed,
by the defendants, to constitute an emancipation of said
*Caleb,* by his mother, which prevented him from deriving a
settlement from her in the town of *Norwich.*    The terms of
that agreement are very loosely stated in the verdict.    It
merely finds, that on the first of *April,* 1833, (which was
before the mother of *Caleb* had acquired a settlement in
*Norwich,* and while he resided with her there,) she, being
unable to find employment for her family, it was verbally
mutually agreed between them, that he might go and take
care of himself, and have his time and earnings ; and that
there was not any consideration paid or received, by either
of them ; and that he then left her, and obtained employ-
ment from time to time elsewhere, occasionally returning to

and remaining temporarily in her house. No objection has been made to this agreement, on the ground that it was verbal, and not written; and we are of opinion, that if there were no other objection to it, it would be as valid and effectual as if it was in writing. Nor, in the conclusion to which we have come in this case, have we deemed it important to consider the circumstance that no pecuniary consideration was paid or received, by either of the parties to this agreement, as was probably the meaning of the jury in their verdict. If however, the agreement was of such a character, that, if made on an adequate consideration, whether pecuniary or otherwise, it would have had the legal effect of so separating the son from his mother as to deprive her of her parental controul over him, such a consideration would probably be held to be inferrible from the terms of the agreement itself.

We come, then, to consider the effect of this agreement on the settlement of the pauper in question, supposing it not to be invalid, by reason of a want of form or consideration. We do not deem it necessary to scan very critically the precise terms of it; for, conceding that its stipulations are as broad and full as the defendants claim, *viz.*, that the son might leave the service of his mother, and appropriate his earnings to his own use, and be free from her controul, and that she should thereafter be discharged from her obligation to support him, we are clearly of opinion, that whatever might be the effect of such an agreement, as between the son on the one part, and the parent, or another person, on the other, respecting the personal right of the son to retain or recover his earnings, in his own name and for his own benefit, it does not release the child from the authority and controul of the parent, nor the parent from the duty of maintaining and protecting the child. It neither destroys nor impairs the previous subordinate relation which the child sustained towards the parent, as a member of the family. The duties and legal relations of minor children and their parents towards each other, are imposed by the law, not merely in accordance with the natural obligation, but from considerations of high public policy and the general welfare of the community; and cannot be divested or varied, by any private agreement between them. In *Adams & Barnum* v.

*Oaks*, 20 *Johns. R.* 282. the father of the pauper in question, when the latter was seventeen years of age, executed an instrument in writing to him, whereby, for the consideration of fifty dollars, he, in the fullest manner, released his son from all claim to his future services, and permitted him to work and contract for himself, and go where he pleased, relinquishing all parental rights and controul over him. On the question as to the settlement of the son, it was held, that the instrument, as an act of emancipation, was a nullity, and that the father could not, by such an act, devest the right of a derivative settlement of the son, acquired from the father. *Platt*, J., in giving the opinion of the court, says: "The contract, whereby the father attempted to release his infant son from all parental charge and controul, was absurd, and can have no effect upon the question before us. The law determines the relation between a father and his infant children, which it is not in their power to change." This decision is directly in point on the question before us; and was approved and confirmed, in *Adams & Barnum* v. *Foster & Lawrence*, 20 *Johns. R.* 452. with reference to the same agreement.

There is no doubt that a minor may, in certain cases, contract a relation or obligation, which is inconsistent with, and will therefore, supersede or suspend, his subordinate relation to his parents, and thus prevent him, while such subordinate relation is so superseded or suspended, from deriving or following a settlement subsequently acquired by such parents. This would be on the ground that he was *emancipated,* as it is termed, from the parents, before the acquisition of such settlement, and therefore, that its derivation by the child from the parent is prevented or delayed, by the destruction or suspension of the subordinate relation of the former to the latter, on which the derivation of the settlement by the child is founded. Thus, a minor son, by contracting marriage, or, in *England*, by enlisting into the service of the king, will be so emancipated, and thus prevented from acquiring the new settlement of his parent. In these cases, the contract of marriage in both countries, and that of enlistment in *England*, is a lawful contract, recognized and allowed as valid, and which, therefore, it was competent for the minor to make; but the relations created by them, in the one case, to his wife and family, and in the other, to his gov-

*Litchfield,*
June, 1852.

Torrington
*v.*
Norwich.

ernment, are inconsistent with, and therefore supersede, the parental controul and authority, and the subordinate relation which he before sustained to his parents, as a part of their family; and consequently, prevent or suspend the acquisition of a settlement from either of them, as one of the. consequences flowing from such subordinate relation. And the same reason will be found applicable to all the cases where it has been held, that the settlement of a minor is prevented, by his emancipation, resulting from a contract made by him. *Rex* v. *Witton,* &c. 3 *Term R.* 355. *Burr. Set. Ca.* 170. *Rex* v. *Wilmington,* 5 *B. & Ald.* 525. (7 *E. C. L.* 180.) *Rex* v. *Rotherfield Greys,* 1 *B. & Cres.* 345. (8 *E. C. L.* 95.) *East Woodhey* v. *West Woodhey,* 1 *Stra.* 438. *Rex* v. *Norton,* 2 *Stra.* 831.

In the present case, the agreement between the pauper's husband and his mother, being void, did not change the relation between them, nor affect his subordinate situation towards her; and therefore, did not prevent him, or, consequently, his wife, from deriving a settlement from her in *Norwich.*

The superior court is therefore advised to render judgment for the plaintiffs.

In this opinion the other judges concurred.

Judgment for the plaintiffs.