Johnson *v.* Terry.

## WILLIAM S. JOHNSON *vs.* ANDREW TERRY.

The father is entitled at law to the custody and control of his minor children, even to the exclusion of the mother. This right is incident to his duty to maintain, protect and educate them.

And he cannot divest himself of this right by an agreement with the mother.

And he does not lose it by permitting them, after they have been taken away from his home by the mother, to remain away with her for several years, undisturbed.

And such a neglect of the children by the father, where taken away without his assent, does not constitute an emancipation of them.

The statute (Gen. Stat., p. 309, § 53,) which provides a mode by which a parent may give away a child in adoption, implies that it can be legally done in no other mode.

Where a father in such circumstances recovers possession of his child by stratagem or fraud, the fact is not material in an action at law, where only the question of legal right is involved.

ASSAULT and battery, brought to the superior court in Litchfield county, and tried on the general issue, with notice, closed to the court, before *Pardee, J.* The court found the following facts :—

In the year 1860, the plaintiff lived with his wife and their three minor children, in the state of New Jersey. In that year his wife left him, taking with her the three children, and during the last six years she and the children have resided in the town of Plymouth, in this state. The plaintiff obtained a divorce from her in the year 1860, and from that time to the 18th day of November, 1865, did not furnish any support for the children or ask for their custody, although he knew where they were. In March, 1865, the defendant asked the mother if her son William, the eldest of the children, and about thirteen years of age, might live with him. She said he might if he chose to. The son said he would go, and went to live with him, and continued with him until about the 18th of November, 1865.. At this time the plaintiff, being in the town of Bristol, adjoining the town of Plymouth, employed two men to go to Plymouth and bring the boy to him. They drove to Plymouth, and finding the boy in the street, asked him to ride. He got into the carriage, and they drove towards Bristol, passing by the defendant. As they passed him the boy called to him repeatedly to save him. The defendant, hearing his cry, immediately took a horse and wagon, and followed the carriage to Bristol. The boy was delivered to the plaintiff. The defendant came up immediately after, and endeavored to take the boy from him by force, in doing which he committed the assault and battery set forth in the declaration.

The court upon these facts found the issue for the plaintiff, and rendered judgment for him to recover three hundred dollars damages and his costs. The defendant moved for a new trial.

*H. S. Sanford* and *Giddings*, in support of the motion.

It appears by the record that no unnecessary force was used by the defendant, so that the only question is, whether he had a right to use reasonable force to recover possession of the boy.

1. The defendant was clothed with all the rights which the mother and the boy could jointly confer. The boy had attained an age of considerable discretion, and under the circumstances of the case his wishes were of importance in the matter of his own custody. *Matter of Woolstonecraft*, 4 Johns. Ch. 80; *Commonwealth* v. *Hammond*, 10 Pick., 274. If that choice was wisely exercised, as the record shows it to have been, it will be sanctioned by the court. *Nichols* v. *Giles*, 2 Root, 461; *People* v. *Mercein*, 8 Paige, 47; *Prather* v. *Prather*, 4 Dessau., 33. The plaintiff surely could gain no greater rights by force, than by regular and due process of law. His remedy was by habeas corpus, a remedy commensurate with his right. The father has in no case a *vested* right to the exclusive custody of a child. *State* v. *Smith*, 6 Greenl., 462.

2. The father had fully emancipated the boy. He had abandoned all his duties towards him, and must, consequently, be held to have relinquished all his rights over him. The rights and duties of parent and child are reciprocal. The right of the parent, says Judge Peters, in *Morse* v. *Welton*, 6 Conn., 350, "is bottomed on his duty to maintain, protect and educate. But this right and this duty may be transferred to another and may be relinquished to the child." 1 Bla. Com., 472; 1 Swift Dig., 41, 61; *Varney* v. *Young*, 11 Verm., 260; *Nightingale* v. *Withington*, 15 Mass., 274; Reeve's Dom. Rel., 294. But during six years the plaintiff, although he knew where the boy was, had furnished him no support, and had not claimed the custody of him. He had by his course of conduct, tacitly at least, emancipated the boy. The emancipation may be tacit. *Whiting* v. *Earle*, 3 Pick., 201; *Smith* v. *Smith*, 30 Conn., 111. Absence or neglect of the parent or tacit acquiescence work emancipation. *Canovar* v. *Cooper*, 3 Barb., 117. The father may surrender the care

and custody of a child to the mother. *Wodell* v. *Coggeshall,* 2 Met., 92. If the father separates from the mother, and permits the child to leave him, and go with her, he is no longer entitled to the earnings of the child, and has no power to avoid his reasonable contracts. 1 Parsons Cont., 257. Consequently he cannot forcibly, and without notice, at his own volition, resume the custody of such child. The interests and feelings of others, as well as those of the child, are to be regarded and protected. And there was here a valid contract implied by law for services in recompense for nurture and education, between the defendant on the one hand and the boy and his mother on the other. By established usage, in Connecticut at least, the phrase "to live with another," when employed in such a connection, implies such a contract. Reeve Dom. Rel., 292. And this contract the father could not set aside.

*G. C. Woodruff* and *G. M. Woodruff,* contra.

BUTLER, J. The plaintiff, the father of a legitimate child, was in the quiet custody of the child, when assaulted by the defendant for the purpose of taking it away from him. The defendant had been in possession of the child, and the father had regained the possession by strategem, but that fact is entirely immaterial, if the possession of the father when obtained was lawful and exclusive. Lord Kenyon once held upon *habeas corpus,* as against the putative father of an illegitimate child, who had obtained possession of the child from the mother by force and fraud, that he would put matters in the same situation again and restore the child to its mother. The force and fraud if exercised may be a proper subject for consideration on the hearing of a *habeas corpus* relative to the possession of a child, where the question is one of *discretion,* and where the further question, whether the father is the proper person to have the care of it, is legitimate. But in an action at law turning on the strict legal rights of the parties, the manner in which the possession was obtained can

not be material, unless upon a question of damages, for it can affect no rights.

That the father is entitled to the custody and control of his minor children, even to the exclusion of the mother, is elementary law. The right arises necessarily from and is incident to his duty to maintain, protect and educate them. In order to justify the assault committed the defendant was bound to show a paramount right. That he utterly failed to do. It was claimed upon the argument that the facts show a relinquishment of the custody to the mother. It is not claimed that there was any agreement or contract between the father and the mother, by force of which the custody and control was transferred. All that the finding shows is that she left the home of the father and took with her the children. It is not found that she took them pursuant to any agreement or with the assent of the father. And if such contract were shown, it would not be a justification to the defendant, for such a contract would not be recognized as a lawful one. It is not in the power of a father to divest himself by contract, even with the mother, of the custody of his children. This was distinctly recognized as law in *Torrington* v. *Norwich*, 21 Conn. R., 543, and is also recognized in our legislation, (Gen. Statutes, p. 309, sec. 53,) which enables a parent under certain circumstances to transfer the right, and impliedly restrains him under all others. The citation from the opinion of Judge Peters, in *Morse* v. *Welton*, is inapplicable, for he was speaking, not of the right to the custody and control of a child, but of a right to his services.

It is further claimed that inasmuch as the father knew where the children were and permitted them to remain undisturbed for several years with the mother, he abandoned them and lost his legal right of control over them. But a right which the law gives in connection with the duty imposed, both founded on the highest principles of policy, and which for that reason cannot be aliened or transferred, for the same reason cannot be lost, dedicated or abandoned.

It is further claimed that the child was emancipated. It is

unquestionably true that a father may emancipate a child as between *them,* so that the child will be at liberty to go where he pleases and enjoy the fruits of his own earnings. But there are no facts in this case which show any such emancipation. It is a naked case of the removal of the children from the custody and society of the father, without cause shown, and without his assent. The child was not emancipated, nor was the mother clothed with any rights, and neither could confer any right or authority upon the defendant that would justify him in interfering by force to prevent the father from resuming and continuing the custody and control of the child whenever he thought proper to attempt it.

A new trial must be denied.

In this opinion the other judges concurred.