IN RE: EDITH R. McC. HUBBARD
(Appeal from Probate)
*vs.*
MURIEL McCORMICK HUBBARD ET AL.

IN RE: ELISHA DYER HUBBARD, A MINOR
(Appeal from Probate)
*vs.*
MURIEL McCORMICK HUBBARD ET AL.

Superior Court     Middlesex County     File Nos. 9016, 9017

MEMORANDUM FILED AUGUST 21, 1945

*Cyril Coleman* and *Hugh M. Alcorn,* of Hartford, and *Austin L. Wyman,* of Chicago, Illinois, for the Appellants.

*Arthur E. Howard,* of Hartford, and *F. Howard Stickney,* of Deep River, for the Appellees.

SHEA, J. Appeal from decrees of the Probate Court for the District of Middletown approving the adoption of two minor children.

On June 20, 1939, by decree of the Probate Court for the District of New Haven, the minor child, Edith, was given in adoption to Muriel Hubbard of Middletown. A similar decree for the adoption of the minor child, Elisha, was entered by the Probate Court for the District of New Haven on July 25, 1939. The children were taken by Mrs. Hubbard to her home in Middletown, Connecticut, where they have resided since that time.

On March 11, 1943, Muriel Hubbard filed with the Probate Court for the District of Middletown, her resignation as guardian of the persons of both of said minor children and petitioned the court to appoint Elvira H. Parsons to be the guardian of the persons of said minors to act in the place and stead of the adopter parent. The same petition requested the court to appoint the Middletown National Bank of Middletown, Connecticut, sole guardian of the estates of said minors. On the same day the Probate Court for the District of Middletown accepted the resignation of Muriel Hubbard as guardian of the persons of the minor children and in her place and stead the court appointed her nominee, Elvira H. Parsons of Middletown, as sole guardian of the persons of said minors. At the same time the court appointed the Middletown National Bank of Middletown as guardian of the estates of said minor children. Elvira H. Parsons appeared in court, accepted the trust, and gave a qualifying bond, and likewise the Middletown National Bank accepted its trust and gave a probate bond for the faithful discharge of its obligations and has continued to act as guardian of the estates of said minors to the present time.

At the time of her appointment as guardian of the persons of said minor children Elvira H. Parsons was employed as a housekeeper by Mrs. Hubbard. After her appointment the children remained in the home which had been provided for them by Mrs. Hubbard. In the spring of 1943 Mrs. Hubbard enlisted in the Women's Army Auxiliary Corps and she has continued in that service since that time. She has maintained her home at Middletown during all this period.

In the latter part of 1943 Fowler McCormick, a brother of Mrs. Hubbard, expressed his dissatisfaction over the situation in which the children were living. He felt that Mrs. Parsons ought to resign as guardian of the persons of the children and he also felt that Mrs. Hubbard should sever her connections with the children.

Mrs. Hubbard anticipated difficulty with her brother over the children's situation and she discussed the problem with Frances M. Clarke whom she had known for several years. Miss Clarke lived in Durham, Connecticut, a distance of seven or eight miles from Mrs. Hubbard's home. She was graduated from Columbia University in 1924 and she holds the degrees of Bachelor of Arts, Master of Arts, and Doctor of Philosophy. She has taught psychology and education at various schools and colleges since her graduation from Columbia. For a number of years she was associated with the Connecticut College for Women as assistant or associate professor of phycology. At the present time she is the principal of a school in New London, Connecticut. She teaches summer courses at the University of Rochester where she has been acting in a similar capacity since 1929. She is widely and favorably known in her field of education. In December, 1943, Mrs. Hubbard requested Dr. Clarke to become temporary guardian of the children. At that time Mrs. Hubbard told Dr. Clarke that Mrs. Parsons desired to resign as her housekeeper but she said that Mrs. Parsons wished to continue as guardian of the children. This arrangement was unsatisfactory to Mrs. Hubbard. Dr. Clarke met Mrs. Hubbard in New York City late in February, 1944, and there they again discussed the question of having Dr. Clarke become a temporary guardian for the children. Mrs. Hubbard also called Dr. Clarke on the telephone at New London late in February and again in March concerning the same question.

On March 4, 1944, Fowler McCormick filed his petition in the Probate Court for the District of Middletown, requesting the court to remove Elvira H. Parsons as guardian of the persons of said minor children and to deprive Muriel Hubbard of all right of custody and control of said minors, and to appoint some other suitable and proper person as guardian of the persons of said minors. This petition alleged that Muriel Hubbard was an unfit person to have the control and custody of said minor children and it further alleged that the said Elvira H. Parsons was entirely dominated by and subject to the control of Mrs. Hubbard. This petition also requested the probate court to award the custody of the minors pending the final determination of the petition to some suitable person and on March 4, 1944, by decree of the Probate Court for the District of Middletown, Grace Bement of Deerfield, Massachusetts, was given the temporary care, custody and control of the

minor children pending the final determination of the petition of Fowler McCormick or until further orders from the court, which assigned April 10, 1944, as the day for a hearing on Mr. McCormick's petition. At that time Mrs. Hubbard was represented by Lucius F. Robinson, Esq. At the request of Mr. Robinson the hearing was continued until April 24, 1944.

On March 21, 1944, Elvira H. Parsons presented to the Probate Court for the District of Middletown her resignation as guardian of the persons of the minor children and requested the court to accept her resignation as such, and on March 24, 1944, Mrs. Parson's resignation as guardian of said minor children was accepted by the court. On April 21, 1944, David M. Reilly, Esq., as attorney for Mrs. Hubbard, requested the probate court for a continuance of the hearing on Fowler McCormick's petition until May 15, 1944. A copy of this request was sent to the attorneys who represented Fowler McCormick. On April 22, 1944, the hearing on the petition of Fowler McCormick was continued until May 15th by the court.

Thereafter, Mrs. Hubbard filed with the probate court, two applications for the approval of agreements giving the minor children in adoption to Frances M. Clarke. These applications were dated April 29, 1944. On May 8, 1944, the probate court ordered notice of the time and place for a hearing on these applications to be given to Corp. Muriel McC. Hubbard and to Dr. Frances M. Clarke, at least three days before the date set for the hearing, and May 12, 1944, was assigned by the court for a hearing on said applications. No further notice was given to anyone concerning this hearing, which was held at the appointed time. A written report concerning the proposed adoption of the minor children was made by Pauline Crandall of the Child Welfare Services on May 8, 1944, and filed with the probate court. The children were not seen by the worker who made the investigation nor did the investigator talk with Mrs. Hubbard because there was insufficient time allowed for the investigation. Physical examinations of the children were not made. The report pointed out that Dr. Clarke was unable to offer the children a complete family setup and that the demands of her profession might hamper her in her desire to offer a well-rounded life for the children. The report also emphasized that there was insufficient time to carefully study the plan of adoption and to determine whether or

not it was the most constructive plan for the future welfare of the children.

On May 12, 1944, the probate court entered the final decrees approving the adoption of said children.

In Connecticut, since the earliest Colonial days, a benign yet arbitrary power, which every sovereignty exercises, to take care of the persons and estates of infants, has been conferred by statute upon courts of probate. *Olmsted vs. Olmsted,* 38 Conn. 309, 319. Primarily the parents are entitled to the custody of their minor children. The right of custody has never been an absolute right, which could be bargained away or disposed of, or transferred, by either parent, except by giv-ing in adoption with the approval of a court of probate in a manner prescribed by statute. *Johnson vs. Terry,* 34 Conn. 259, 263.

Adoption is the establishment of the relation of parent and child between persons not so related by nature. The adoption of a minor child, and the giving of it in adoption to persons other than its natural parents, is a statutory procedure, and creates a status unknown to the common law. Being of purely statutory origin, a legal adoption results if the statutory pro-cedure is followed, but fails if any essential requirement of the statute is not complied with. *Goshkarian's Appeal,* 110 Conn. 463, 465.

In applying statutes of this kind, courts have held that the power to adopt minor children is a creation of statute un-known to the common law, that the statutory mode prescribed is the measure of the power, and that an adoption is invalid unless made in pursuance of the essential requirements of the statute. *Woodward's Appeal,* 81 Conn. 152, 165. The con-sent given to the adoption must be that of the person whose consent is required by the adoption statute. 2 *C.J.S., Adoption of Children,* §21, subd. a (2), p. 385.

Section 648g of the 1943 Supplement to the General Statutes controls the adoption of children. It provides in part as fol-lows: "Any of the following-named persons may, by written agreement, subject to the approval of the court of probate as hereinafter provided, give in adoption to any person any minor child in his charge as herein set forth: The parents or guardian

of the person of any child under the age of fourteen years, the selectmen of any town having in charge any foundling child", etc.

Fowler McCormick, having been appointed guardian *ad litem* for the minor children, claims that Muriel Hubbard did not have these minor children in her charge and that, therefore, she lacked the power to enter into a contract for their adoption. On the other hand, Dr. Clarke, the appellee, claims that the legal authority of the children rested with Mrs. Hubbard who acquired such legal rights when she adopted the children in 1939. The appellee admits that Mrs. Hubbard gave up these rights when she was removed as guardian of the persons of the children and that Mrs. Parsons acquired such rights when she was appointed guardian. However, the appellee insists that Mrs. Parsons lost these rights when she tendered her resignation as guardian and that these same rights were reacquired by Mrs. Hubbard at that time, so that the only person having the right in 1944 to give these children in adoption was Mrs. Hubbard. The appellant claims also that the adoption is defective in other particulars because of the failure to follow the mandatory provisions of our statute.

It seems apparent from the evidence in this case that the decision to adopt these children was conceived in haste and that it was promoted for the purpose of obviating the necessity of having a hearing upon the petition filed by Fowler McCormick for the removal of Mrs. Hubbard and Mrs. Parsons as guardians of the persons of these children.

At the time Mrs. Hubbard signed and entered into this purported contract of adoption the minor children were not "in her charge" as provided under the terms of our adoption statute. She had resigned as guardian of the persons of these children in March, 1943. That resignation was accepted by the court and she was removed as guardian, and on the same day another person, Elvira H. Parsons, was appointed by the court as the guardian of the persons of these children. After that time Mrs. Parsons had custody and control of the children until March 4, 1944, when the probate court, pursuant to section 4795 of the General Statutes, Revision of 1930, ordered that the custody of the children be given to Grace Bement pending the final determination of the petition of Fowler McCormick to remove Mrs. Hubbard and Mrs. Parsons as guardians of the persons of these minor children. The right of a mother as the natural guardian to the custody of her minor

children is inferior to the right of a guardian appointed by a court of probate. *Macready vs. Wilcox,* 33 Conn. 321.

The phrase "in charge" means in the care or custody of, entrusted to the management or direction of. 20 *Words & Phrases* (Perm. ed.), p. 413. Synonyms for the word "charge" as given in Webster's New International Dictionary (2d ed.), are custody, keeping, concern, management. Since Mrs. Hubbard had been removed by the probate court as guardian of the persons of these children, she was not a person "in charge" of these children within the contemplation of the provisions of section 648g of the 1943 Supplement to the General Statutes. She, therefore, had no power to enter into a contract for the adoption of these children.

A great deal might be said concerning the conception and advancement of this plan to adopt these children. I am satisfied from the evidence that Mrs. Hubbard has always felt that she was entitled to the custody and control of these children. Her plan to nominate Mrs. Parsons, her housekeeper, as guardian of the persons of these children was developed for the purpose of providing for the temporary care of the children in Mrs. Hubbard's home while she herself was serving in the Women's Army Auxiliary Corps. Mrs. Hubbard's discussions with Dr. Clarke concerning the possibility of having Dr. Clarke become the temporary guardian of these children after Mrs. Parson's appointment, is definite proof of the belief of Mrs. Hubbard that she still had the custody and control of these children, although she had been removed as guardian of their persons by the probate court. After the purported adoption was approved by the probate court, Mrs. Hubbard continued to evince an unusual interest in the activities of the children and indicated in conversations with Mrs. Bement that the children would live at their old home in Middletown and that after the war was over Dr. Clarke would give the children back to her. Mrs. Hubbard has been very active in the preparation for the trial of the present cases. She has been in constant communication with Dr. Clarke by telephone, telegraph, and by letter. All the expense of this litigation has been paid by Mrs. Hubbard.

Another phase of the case is deserving of mention. Our present statutes on adoption provide that written agreements of adoption shall be filed in the probate court in duplicate, one of such duplicates shall be sent forthwith to the Com-

missioner of Welfare and the court of probate is directed, under our statute, to request the Commissioner of Welfare, or certain specified organizations or institutions, to make an investigation and written report within thirty days from the receipt of such request. Such an investigation was made in this case although the judge of probate testified that he never requested it. The person who did request this investigation requested that it be done within the space of a few days although the statute allows thirty days. The only plausible explanation which can be made to have this unnecessary haste is that it was required to carry out the plan to hold the adoption hearings on the specified date, May 12, 1944, the last court day before the time specified for the hearing of the petition of Fowler McCormick for the removal of Mrs. Hubbard and Mrs. Parsons as guardians of the persons of these children.

Under the statute the probate court could enter either an interlocutory decree or a final decree. The decree which was entered on May 12, 1944, was a final decree.

The appellants claim that the children now have no permanent guardian of their persons. Mrs. Hubbard was removed by the probate court and the resignation of Mrs. Parsons has been accepted by that court. Hence they argue that the children are without permanent guardians and they have requested the Superior Court to appoint suitable persons as guardians of the children.

The power to appoint a guardian of the person of a minor child is vested in the court of probate for the district in which such child resides. Gen. Stat. (1930) §§4796, 4797. Courts of probate have complete jurisdiction of appointing guardians of minors. 1 Cleaveland, Hewitt & Clark, Probate Law & Practice of Connecticut (1926), §41; 1 Swift's Digest (Rev. of 1823), p. 49. The Superior Court cannot exercise a power vested in the court of probate. Mathews' Appeal, 72 Conn. 555. The Superior Court cannot exercise a primary jurisdiction which by statute is reposed in the courts of probate. Home Trust Co. vs. Beard, 116 Conn. 396, 400; State vs. Blake, 69 id. 64, 78; Reiley vs. Healey, 122 id. 64, 79; First National Bank & Trust Co. vs. McCoy, 124 id. 111, 115. The Superior Court cannot appoint guardians of the persons of these children.

The appeal in each of these cases is sustained and the decree from which appeal is taken is vacated.