## ANITA C. LIEBERMAN v. LOUIS A. LIEBERMAN

SUPERIOR COURT    NEW LONDON COUNTY    FILE No. 18051

Memorandum filed January 12, 1949.

*J. Ronald Regnier,* of Hartford, for the Plaintiff.

*Hoyt & Mulvihill,* of New Haven, for the Defendant.

DALY, J. On March 30, 1947, the plaintiff was injured as a result of the defendant negligently operating his car, in which the plaintiff was a passenger. The defendant fell asleep while driving his car and it ran into a tree.

The plaintiff was on March 30, 1947, and still is, a minor. In 1945 she was stricken with poliomyelitis and had been treated for it. Before she was injured the plaintiff was partially disabled as a result of paralysis. The plaintiff was married to the defendant in October, 1946, while he was a student in college. Thereafter she continued to live with her parents and at the

time she was injured and until January 1, 1948, she was supported and maintained by her mother and father. Her husband, the defendant, did not contribute towards her support until January 1, 1948.

The hospital and doctor's bills for the treatment and care of the plaintiff following her injuries on March 30, 1947, together with those reasonably anticipated, amount to several hundreds of dollars. Counsel for the defendant claims that under our law the plaintiff's husband is otherwise liable for her doctors' and hospital bills and that they do not constitute items of recovery in this action unless services were rendered with the understanding that the plaintiff, herself, was looked to as the one to pay for the same.

The plaintiff claims that her father, Philip M. Cohen, was liable and responsible for the doctors' and hospital bills following the injuries received by her on March 30, 1947, and that, as a result of his indorsing his consent upon the writ and complaint for the recovery of the same by her, she is entitled to recover them. She claims that although she was married she is not precluded from recovering them. The defendant's counsel claims that as a result of her marriage she was emancipated and cannot recover for these items in this action.

In *Morse* v. *Welton*, 6 Conn. 547, at page 551, the following appears: "The law . . . is very well settled, that parents are under obligations to support their children, and that they are entitled to their earnings."

In discussing emancipation the Supreme Court of Errors, in *Torrington* v. *Norwich*, 21 Conn. 543, at page 549, said: "Thus, a minor son, by contracting marriage, or, in England, by enlisting into the service of the king, will be so emancipated . . . In these cases, the contract of marriage in both countries, and that of enlistment in England, is a lawful contract, recognized and allowed as valid, and which, therefore, it was competent for the minor to make; but the relations created by them, in the one case, to his wife and family, and in the other, to his government, are inconsistent with, and therefore supersede, the parental control and authority, and the subordinate relation which he before sustained to his parents, as a part of their family. . ."

In *Johnson* v. *Terry*, 34 Conn. 259, at page 263, the court said: "That the father is entitled to the custody and control of

his minor children, even to the exclusion of the mother, is elementary law. The right arises necessarily from and is incident to his duty to maintain, protect and educate them . . . It is not in the power of a father to divest himself by contract, even with the mother, of the custody of his children."

In *Draus* v. *International Silver Co.,* 105 Conn. 415, at page 420, we find the following: "It has been held that emancipation results where the father allows the minor to make his own contracts—to receive his wages, to shift for himself, or where the father neglects and refuses to support and educate the minor, as where the father releases the parental control to a third person. . . ."

In *Plainville* v. *Milford,* 119 Conn. 380, at 384, it was stated that: "Ordinarily a child is emancipated at majority. . .But the desertion of a child by his parent may also emancipate him. . . . Emancipation occurs when a person once under the power and control of another, is rendered free. 1 Bouvier, Law Dictionary (3d Rev.) p. 1004. A minor is emancipated if placed in a new relation inconsistent with the former relation as part of his parent's family. . . . Where the parent has absolutely renounced, by agreement or implication, all care and control of the child, he is emancipated."

In *Milford* v. *Greenwich,* 126 Conn. 340, at page 343, the court said: "However, by the great weight of authority the marriage of an infant son, at least if it be with the consent of the parent, works an emancipation. . . The reason is that: 'The husband becomes the head of a new family. His new relations to his wife and children create obligations and duties which require him to be the master of himself, his time, his labor, earnings and conduct.' *Sherburne* v. *Hartland,* 37 Vt. 528, 529; 1 Beale, Conflict of Laws, 214. . . . A fortiori, this would be so where emancipation resulted from the marriage of a child with the consent of the parent."

It would not appear that the plaintiff was placed in a new relation inconsistent with the former relation, as part of her parents' family, as a result of her marriage to the defendant. She continued to live with her parents and to be supported by them. It would appear that the marriage of a minor son with the consent of his parent would create quite a different situation for the very reasons stated in the quoted portions of opinions, above.

Section 7308 of the General Statutes, (Rev. 1949) § 689g of the 1943 Supplement—provides that both husband and wife shall be liable for the reasonable and necessary services of a physician and for hospital expenses rendered the husband or wife or their minor child while residing in the family of its parents. This statute was passed after the cases above referred to had been decided. If the legislature intended to exclude a married minor child residing in the family of her parents it could have done so and it is reasonble to assume that it would have done so. In view of the evidence in this case I conclude that the plaintiff can recover the hospital and medical bills in question. However, in addition, there was testimony by some of the doctors that they looked to the plaintiff for payment of their bills. In *Gins-berg* v. *Ginsberg,* 126 Conn. 146, at page 148, the court said: "Since it is specifically found that the creditors are looking to the wife alone for payment, this case is brought within the exception stated."

As a result of the collision between the automobile of the defendant and the tree, the plaintiff suffered many serious, painful and permanent injuries, including several fractures. She had made some recovery since she first suffered the attack of polio-myelitis. However, her movements and activities had been and were prior to March 30, 1947, very much restricted. Her present condition is most pitiful. Before the date upon which she was injured she needed balance—now she has to rely upon crutches or a wheel chair. As a matter of fact she has a great deal of difficulty in moving without assistance even with crutches. Because of the injuries she received her recovery from the effects of poliomyelitis was set back and she will never again have as good progress as she had before she was injured on March 30. The permanent loss of function is serious.

Judgment is rendered for the plaintiff to recover from the defendant Ten Thousand (10,000) Dollars damages, together with her costs.