(Lucas County Probate Court.)

In re MAUDE FAY OLSON.

Where, in a proceeding in the Probate Court to set aside the adoption of a child on account of failure to secure the consent of the mother who is under none of the disabilities to consent prescribed by Sec. 3137 Rev. Stat., the court would have to grant such request, but by such proceeding the child has once been brought under the jurisdiction of the court under this section, the court will have jurisdiction over such child for all the purposes which this section has in view, and which the best interest of the child demand.

---

MILLARD, J.

April 29, 1895, Martha E. Olson, a widow, filed in the probate court of this county, a

petition for the adoption of Maude Fay Olson, of the age of five years, on August 31, 1894, the child of John W. Olson and Mary A. Olson, and alleged that John W. Olson, the father of the child, freely gave his consent thereto, and that Mary A. Olson, the mother of the child had deserted her. All other necessary allegations were made in said petition.

On the same day, April 29, 1895, said John W. Olson, filed in this court his answer and consent to such proposed adoption, and said that he had examined the petition and believed the facts and allegations set forth therein true, and freely gave his consent to the adoption.

On same date letters of adoption were issued to Martha E. Olson.

May 2, 1895, said Mary Olson, mother of Maude Fay Olson, filed with court a motion for a new trial of this case and the setting aside of the adoption, because of:

First—Irregularity, by which she was prevented from having a fair trial.

Second—Misconduct of Martha E. and John W. Olson, whereby said Mary was prevented from being present at the hearing of said petition for adoption.

Third—Surprise, which ordinary prudence could not have guarded against.

Fourth—That the decision of the court is not sustained by sufficient evidence and is contrary to law.

July 9th and 10th hearing was had and case submitted to court upon evidence and argument, and time taken by the court in which to decide question raised.

Section 3137 of the Revised Statutes of Ohio precribe the terms and conditions of adoption in this state, and what shall be done by parties and court in case of adoption. It reads as follows:

"An inhabitant of this state not married, or a husband and wife jointly, may petition the probate court for leave to adopt a minor child not theirs by birth and for a change of the name of such child, but a written consent must be given to such adoption by the child if of the age of fourteen years, and by each of his or her living parents who is not hopelessly insane, intemperate, or has not abandoned such child, or if there are no such parents, or if the parents are unknown, or have abandoned such child, or if they are hopelessly insane or intemperate, then by the legal guardian, or if there is no such guardian, then by a discreet and suitable person appointed by the court to act in the proceedings as the next friend of such child; but when such child is an inmate of an orphan asylum, etc."

It will be noticed by the above statement of petition for adoption that it was therein alleged that the mother of said child, who now makes this motion, had deserted her; and this proceeding from that time forth was had, on the part of the court, as one in which the mother had abandoned her child and in which her consent was not required.

The proof adduced on the hearing of the mother's motion to set aside the order of adoption, and upon the full hearing of the application for adoption, after the original order was set aside, showed that the child was under fourteen years of age; that the parents do not live together and have not for some months; that their separation was brought about by the hard drinking of the husband, and, directly, by his ordering the groceryman, of whom the family got their supplies for each day's sustenance, to no longer give his wife credit or to allow her to have necessaries at his expense; that he was pretty "full" when he gave the order, and that immediately thereafter he left his family and went on a bigger "toot" than before; that the next day the wife, finding her supplies exhausted and being refused more because of her husband's orders, packed her household belongings in a room and went to friends; that the grandmother, on the father's side, had been to the house but a short time before and asked to have the little girl now in question allowed to come and visit her; that as she was going to other friends, the mother of the child, as she swears, thought she would let the child visit her grandmother for a time, and took her to such grandmother for such visit; that the separation took place on April 25, 1895, and that the child was taken to her grandmother on April 26, 1895, for such proposed visit; that April 29th, or only three days later, the grandmother filed her application for adoption, which was followed on May 2, 1895, by the motion of the mother to set aside the adoption, as set out heretofore.

The evidence further shows that the mother is not, and was not at the date of the adoption, hopelessly insane, intemperate, and, I think, clearly, that she had not abandoned her child; but that she was present in the city when adoption was made, and that in her condition court had no authority to grant adoption without her consent. That consent not having been obtained, the order of adoption will be canceled and the child released therefrom.

Here another question was raised on which the court is asked to rule:

"As before stated, the evidence discloses that the father and mother are living separate and apart from each other: that this offspring of their marriage was with the mother at the time of their separation, and that whether or not the father intended to make such separation final, the night before he left them, with orders to dealers to give them nothing more to eat, he then for a time certainly abandoned his wife and offspring."

On behalf of the grandmother who made the adoption, counsel claims that this court had no jurisdiction to do anything more than annul the letters of adoption, and that it can make no further orders affecting he child.

On behalf of the mother it is claimed that the question as to the care, custody and control of this offspring is now before the court; that being a court of competent juris-

diction, the father and mother stand before it upon an equality, and that the court having heard the testimony has the power to decide which parent shall have the care, custody and control of the offspring.

Parties rely for their respective claims, on the act of April 14, 1893, (90 Laws, page 186), entitled: "An act to define the rights of fathers and mothers living separate and apart from each other, or when divorced, as to the care, custody and control of their children."

Section 1 of this act provides, in substance, that when husband and wife are liivng apart, or are divorced, and the question as to the care, custody and control of the offspring of their marriage is brought before any court of competent jurisdiction in this state, they shall stand upon an equality before the court as to the care, custody and control of offspring, so far as it relates to their being either father or mother of said children.

It then further provides, "That the court, upon hearing the testimony of either or both of said parents, corroborated by other proof, shall decide which one of them shall have the care, custody and control of such offspring taking into account that which would be for the best interest of said children; provided if such children be ten years of age or more, they be allowed to choose which parent they prefer to live with, unless such parent, so selected by said children be unfitted to take charge of such children, by reason of moral depravity, habitual drunkenness or incapacity, then said court shall determine the custodian of said children."

"If upon such hearing it should be proven to the court that such parents are improper persons to have the care, custody and control of such children, the court may, in its discretion, either designate some reputable and discreet person to take charge of said children, or may commit them to a county or district childrens' home in which they or their parents have a legal settlement. The court may order either or both parents to support or help support said children, no matter who may be their custodian."

"That said court shall have full power and authority to make any order or decree that is just and reasonable, permitting the parent who is deprived of such care, custody and control of said children to visit said children and to have temporary custody of them."

If this be all the law of Ohio bearing on this class of cases, what is necessary to give the court juisdiction in any given case, and how far does the present case bring it within this law as to children?

That this law may apply, the following condition must exist:

First—Husband and wife must be living separate and apart from each other. Eivdence shows that this is the situation of parents in this case.

Second—Question as to the care, custody and control of the offspring of their marriage must be brought before a court of competent jurisdiction in this state.

We have seen by section 3137 of the Revised Statutes of Ohio, before read, that full power is conferred upon the probate court in all cases of adoption, or where parties seek to adopt a child. Such being the case as to jurisdiction of this class of cases, does not this desire to adopt make a clear case of a "question as to the care, custody and control of the offspring of their marriage being brought before a court of competent jurisdiction in this state?"

It seems to me that a more direct question as to the care, custody and contorl of a child could not be brought before a court of competent jurisdiction in this state, than be seeking to adopt such child, whereby, as set forth in sectoin 3140 of the Revised Statutes, "The natural parents shall by such order" (of adoption) "be divested of all legal rights and obligations in respect to the child and the child be free from all legal obligations of obedience and maintenance in respect to them."

Can there be any question but that when we have before us this petition for adoption, with proper answer and consent of one parent, we have before us to decide, a question as to the care, custody and control" of this child whose parents are admitted, by the terms of the petition, to be 'living separate and apart from each other?"

I think not. If before a court of competent jurisdiction and the parents are living separate and apart from each other, does it make any difference, under this law, for what purpose parties come into court, so long as the question of care, custody and control of the offspring of such marriage is brought before the court? In other words, though all parties come before the court for the purpose of adoption, and the evidence therein adduced shows that no adoption should be made in a particular case, but that the welfare of the child requires an order from court for its protection, is the court, because of its inability to grant adoption, deprived of its power conferred by this law of "taking into account that which would be for the best interest of said children," even to deciding which parent shall have the care, custody and control of such offspring? Certainly not. When the court once gets jurisdiction of the parties and subject-matter for one purpose, under this law, it has it for every purpose which the evidence of the case shows that the best interest of the offspring demands.

The court, under its general powers, and other sections of the statutes, have nearly all the power which this statute confers, but we need not, in this case, now refer to them, as this law, in the opinion of the court, is ample in itself for the purpose of his case. If, however, ought more is needed, it will be found in the general powers of the probate court over children and parents

Third—The child must be under the age of ten years to be deprived of the right to choose which parent it prefers to live with. The petition shows, as does the evidence, that the child is not yet six years of age.

Fourth—Both parents being improper persons to have the care, custody and control of their offspring, will warrant the court, under this law, to take their child or children and place her or them with some reputable and discreet person, or commit them to a county or district childrens' home, in which their parents have a legal settlement.

To warrant the court in so taking a child, it will be noticed that it must, upon the hearing, be proven to the court that both parents are improper persons to have the care, custody and control of such children. Has such proof been made? Poverty alone would not warrant the court in taking a child from parents, for the poor have as much love, as much ambition, as much morality as the richest, and American history teaches us that our best men and those who have attained the greatest eminence, have sprung from the severest poverty.

The improper persons referred to in this law are more fully specified and described in section 3140a, of title 1, division 1, chapter III, wherein it is provided that where the parent, or parents, of any minor child, or children, shall be unable, through vagrancy, negligence or misconduct, to support such child or children, or when such parent or parents shall unlawfully beat, injure or otherwise habitually ill treat such child or children, or cause or allow them to engage in common begging, the probate court * * * upon affidavit * * * may issue summons, etc.

As the evidence does not show this state of affairs in this case, there only remains to make either parent an improper person, within the meaning of the law, that he or she be immoral, which would be included in the term "misconduct" above used, or that as provided in section 3137, before given, he or she be hopelessly insane on intemperate; or, as described in the act of April 14, 1893, the parent be unfit to take care of such child by reason of moral depravity, habitual drunkenness or incapacity.

How stands the case as to the parents of this child?

Do either come under the terms above used to describe the parent as an unfit person to take the care, custody and control of offspring?

The father, as shown by the evidence, unfortunately, is so given to strong drink as to bring him under the charge of habitual drunkenness. But for this, his life could be happy and prosperous. All the misfortunes of the family come directly from this one cause. Poverty, neglect, abuse, hunger, and the whole train of evils which follow excessive drinking, has been the lot of this wife, and from the one cause alone. The court could not, under this evidence, award the custody and care of this child to the father.

The mother, as shown by the evidence, has tried to do her full duty as wife and mother. Not a thing is urged or proven against her, or that could under any light be used to cast a shadow on her good name, that was not directly incited or procured to be done by the husband; and it is greatly to the credit and honor of the husband that he openly avows and admits that he was at the foundation of anything for which his wife was criticised.

That she did not go to church, did not send her child to Sunday school, did drink a glass of beer with her husband occasionally, especially on wash-days, are things which some will condemn. Recalling her poverty, as shown by the evidence, the lack of clothing for herself and child sufficient to protect them from uncharitable remarks if they went among well dressed people, this court has no criticism to make, and can only say that, in its opinion, the evidence in this case shows her to be made of material from which is created heroes and martyrs, and I can recall nothing which makes me believe her an unfit person to have the care, custody and control of her own offspring. Until I can find this to be so, the law confers on me no power to take from her the child for which she suffered the pangs of maternity and around whom her love is now centered. I do not forget the grandmother's love, nor even the love which I believe the father bears for his child, but the law only warrants the exercise of power by the court on prescribed conditions, which I cannot find in this case. I have a hope, which I will here express, that the struggle in this case, for this child, has opened to both parents the knowledge that there is a link which should bind their lives as one, and that the father may choose wisely between giving up his own child or his appetite for strong drink. If he sees fit to do so, true happiness is in store for him, for his wife, for his children and the mother who has never closed her door, her purse, or the avenues of her heart to him.

It is, therefore, by the court, ordered, adjudged and decreed that the care, custody and control of said Maude Fay Olson be given to the mother, Mary A. Olson, until the further order of this court, but that the father have the right to visit her and have her visit him at the grandmother's, at all reasonable times, but always subject to the order of the mother of said Maude Fay Olson.