## In the Matter of the Adoption of Henry Bastin. Josephine Vandermis, Appellant, *v.* Frank Gilbert.

*Practice, Superior Court—Appeal and certiorari—Proceedings in adoption.*

No provision is made for an appeal in proceedings for the adoption of a child under the Act of May 19, 1887, P. L. 125, and the only writ by which a review can be had is a writ of certiorari; whilst the Act of May 9, 1889, P. L. 158, has reduced all writs designed to have a cause reviewed to one name the distinguishing characteristics of the different writs that prevailed before the passage of that act still remain. Hence the only question raised by an appeal in such proceedings is the regularity of the proceedings.

*Adoption—Act of 1887—Precedent—Consent of parent, etc.*

The act of 1887 requires in cases of adoption, the consent of the parents or surviving parent to be given, if there are no parents then the consent

of the next friend, guardian, etc.; where therefore the record shows that the consenting surviving parent died the day before the petition was presented and no other party competent to consent intervened the terms of the act have not been complied with and the proceedings must be quashed.

Argued May 10, 1889. Appeal, No. 215, April T., 1899, by plaintiff, from decree of C. P. Armstrong Co., March T., 1899, No. 13, dismissing petition to revoke decree of adoption. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J. W. W. PORTER, J., dissents.

Hearing on petition and affidavit for the adoption of Henry Bastin, a minor. Before RAYBURN, P. J.

It appears from the record that on December 5, 1898, Frank Gilbert presented his petition to the court of common pleas of Armstrong county in which he set out that he was desirous of adopting as his heir one Henry Bastin of the age of seven years; that Albert Bastin, the father of Henry Bastin, was seriously sick and that it was his desire also that his child should be adopted by the said Gilbert and that the said Albert Bastin had given his consent, and in said petition prayed the court to decree that said adoption be made, and that the said Henry Bastin assume the name of said Gilbert and be known and called by the name of Henry Bastin Gilbert.

This petition was prepared and signed and the consent of the said father, Albert Bastin, obtained thereto on December 2, 1898, at which time the said Albert Bastin was approaching death and died on the next day, to wit: December 3, 1898, two days before the petition was presented to the court and decree made. On December 5, 1898, the court on presentation of petition decreed the adoption prayed for.

On February 27, 1899, Josephine Vandermis, the maternal grandmother of said Henry Bastin, presented her petition to said court praying the court to revoke, annul and set aside said decree of adoption for the reason that at the time said decree was made the father and mother of said Henry Bastin were both dead and that there was no one legally authorized to give consent as required by law.

On March 6, 1899, the said court by opinion filed refused to set aside said decree, from which order this appeal was taken by Josephine Vandermis.

*Error assigned* was in making the following order or decree:
"There is not any allegation in the petition that the father was
not of sufficient mental capacity to give his consent, nor that
any fraud or undue influence was brought to bear upon him to
give the consent, and that being the only reason alleged in the
petition for a revocation of the decree.    We hold that the father
had a right to give the consent for the adoption, and that hav-
ing been acted upon and the decree made, it cannot now be
revoked unless it were shown to the court that the consent was
obtained by undue influence or fraud; and it does not matter
whether the decree was made before or after the death of the
father, as he had a right in his lifetime to direct who should
have the custody and care of his child.    For these reasons the
prayer of the petitioner is refused."

*Orr Buffington*, with him *H. N. Snyder*, for appellant.—No
right to adopt a child as an heir exists at common law.

In Pennsylvania the right is based on the Act of May 4, 1855,
P. L. 431, and Act of April 2, 1872, P. L. 31, as amended by
Act of May 19, 1887, P. L. 125: Ballard v. Ward, 89 Pa. 358.

Where a right is given by statute the statute must be strictly
followed.

The Act of May 4, 1855, amended by Act of May 19, 1887,
provides for adoption by decree of the court of common pleas
and the Act of April 2, 1872, by deed.

The petition in this instance is under the Act of May 4, 1855,
which requires that the parent if living shall give consent or,
when dead, then the next friend, or next of kin: Booth v. Van
Allen, 7 Phila. 401.

The undisputed fact here is that at the date of the decree
the father and mother were both dead, and although the father's
consent had been obtained the petition had not been presented
to the court or the decree made until after his death, which fact
was not made known to the court.

For that reason the decree should be revoked: Booth v. Van
Allen, 7 Phila. 401.

The death of the consenting parent, before the petition is
acted upon by the court and the decree made, nullifies the con-
sent given; rights of other parties, the next of kin, have inter-
vened.

## VANDERMIS v. GILBERT. 573

570, (1899).]                    Arguments.

Like a power of attorney it is revoked by the death of the giver: Yerkes's Appeal, 99 Pa. 401.

The rights of those related to the child will not be set aside in favor of a stranger: Booth v. Van Allen, 7 Phila. 401.

Neither the child nor the adopting parent obtained any vested right by the decree: Ex parte Blair, 11 W. N. C. 239.

The act contemplates the presence of the consenting party in court and an adjudication in open court, that the court may be informed of all the facts and circumstances and be able to judge as to the best interests of the child.

The welfare of the child appears to be the main object of the act.

But we are told that the father in his lifetime had the right to direct who should have the custody and care of his child.

The consent here given cannot be construed into an appointment of a testamentary guardian.

Adoption cannot be affected by testament, and there is no claim that it is by deed.

It will be argued that because the consent was given so shortly before the death of the consenting party and acted upon so soon thereafter, that it should hold good. If good for one day then it is good for one year, and if good for one year when will it be avoided?

*Floy C. Jones,* within him *Boyd S. Henry,* for appellee.—— Next friend does not mean next of kin. In divorce proceedings the prochein ami is seldom a relative. The act itself uses the term "next friend" and if the court should hold that the father's consent was not in court at the time of the adoption proceedings, then we hold that not only was the consent of the next friend in court, but that it was upon his own petition these proceedings were had.

If by some means a lawsuit were to be brought by this boy, Henry Bastin, who would bring it as his "next friend?" Would it be his grandmother, who never interested herself in the child, simply because she was his grandmother, or would it be Frank Gilbert, in whose home the boy actually was and is now, whose whole life is wrapt up in the boy? Would he not be the "next friend" in every sense of the term?

Since the mother's death, Frank Gilbert, the appellee, has

had charge of Henry Bastin, the little orphan, and has at all times treated him as a child of his own. He is a man of "good moral character, and of sufficient ability to properly maintain said minor," and one in whose care "the welfare of the said Henry Bastin will be promoted by the adoption." This fact the lower court found by the decree of adoption.

As the argument of appellant says, "the welfare of the child appears to be the main object of the act." In the present case there can be no question that the best interests of the boy and of his welfare will be promoted by his remaining in the house of those who have learned to love him, who have maintained and cared for him as zealously and carefully as one of their own children, whom he looks upon as his own parents and to whom his father, in his last illness, intrusted the life of his little motherless boy. This is not a case of a father giving his child over to the uncertain treatment of strangers, rather is it an instance of a father, on his death-bed, in an attempt to do the best thing possible for his child, consenting to the adoption of his boy by parents, who have been his intimate friends for years, who have proven by their past kindness and affection for the little orphan that the future care of him will be no less.

His consent is in the nature of the appointment of a testamentary guardian for his child and as such it should be regarded.

OPINION BY BEEBER, J., July 28, 1899:

This is a proceeding for the adoption of a child under the Act of May 19, 1887, P. L. 125. On the 5th day of December, 1898, the petition was presented to the court and the decree made. The father of the child had signified his consent to the adoption by signing the petition on the 2d day of December, but he died the day before the petition was presented and decree made. The mother of the child had died some years before. The question is whether the court has proceeded in accordance with the provisions of the act of assembly regulating the manner of procedure to be followed to secure a decree of adoption.

Where a proceeding in an inferior court is purely statutory and no provision is made for an appeal, the only writ by which a review can be had is a writ of certiorari. This writ is allowable except in cases where it is expressly forbidden by the statute; but upon such a writ the appellate court can only review

the regularity of the proceeding under the statute. Its only duty is to see whether the procedure of the court below has been according to the act of assembly under which it acts. In the consideration of this question the appellate court is confined to the record: Kimber v. Schuylkill County, 20 Pa. 366; Chase v. Miller, 41 Pa. 403. The fact that the proceeding is now before us by virtue of an appeal under the Act of May 9, 1889, P. L. 158, does not enlarge our power of review. Whilst this act has reduced all writs designed to have a case reviewed by an appellate court to one name, the distinguishing characteristics of the different writs that prevailed before the passage of that act still remain. If before the passage of that act the proper writ to secure a review by an appellate court was a certiorari, the court on an appeal is still compelled to consider the case as if it were before it upon such a writ, Rand v. King, 134 Pa. 641, and therefore the only matter now before us is the regularity of the procedure of the court below. If the record reveals that it has not been in compliance with the terms of the act, we must reverse, but in doing so we do not pass upon the merits of the case at all.

An examination of the act under which this proceeding was had satisfies us that the record in this case reveals a fatal defect. The act requires the consent of the parents or surviving parent of the child to be given. If there are no parents, then the next friend of the child, or the guardians or overseers of the poor, or such charitable institutions as shall have supported the child for at least a year, must consent. This child had neither parent living at the time the petition was presented and the decree made. The fact that its father, who was the surviving parent, had died only one day prior to the presentation of the petition and the making of the decree leaves the child as much without parents as if he had died a year before. The act contemplates a proceeding in court between parties who are to satisfy the court " that the welfare of such child will be promoted by such adoption." Although the proceeding is by petition, the facts stated in it must be supposed to be made as of the date when the petition is presented. If, at that time, there is no living parent who can consent, then the next friend or the others mentioned in the act of assembly must be called to consent. In this case the father, by his death, lost his power to consent. We

cannot agree that his consent, given a few days before, could be effectual beyond the moment of his death. If it could be effectual one day beyond we can see no reason why it should not be so one year beyond that event, even though the conditions may have changed materially in the mean time. As the act requires the consent of some one before the decree can be made, and as a dead person cannot legally consent, we think the father's consent in this case must be held not to be a compliance with the terms of the act of assembly under which the court was acting.

Judgment reversed and proceedings quashed.