## Saunders's Adoption.

*Children—Adoption—Welfare of child—Abandonment by father—Act of May 28, 1915.*

H. was born May 16, 1909; his mother died in 1911. From 1911 until June 29, 1912, he lived with his paternal grandparents; from June 29, 1912, until May, 1917, he lived with his father and stepmother. In May, 1917, he was placed by his father in the custody and care of his maternal uncle and aunt, with whom he has since resided in Kent County, Del. On Dec. 5, 1921, his father was killed in a railway accident, and the widow recovered $6000, and H. $3000, which was paid to his guardian. Neither his father nor his stepmother had made any substantial contribution to his maintenance while with his uncle and aunt, by whom he was supported and well cared for. On March 21, 1922, his stepmother filed a petition under the Act of May 28, 1915, P. L. 580, for leave to adopt him. Answers were filed by his paternal grandparents and his uncle and aunt, averring, in substance, the above facts and objecting to such adoption: *Held*, (1) that, as the boy had been placed with his uncle and aunt by his father, had been well cared for by them in the past, and their custody had been approved by his paternal grandparents, it did not appear that his welfare would be promoted by his adoption by his stepmother, and the petition should be refused. (2) That by placing the boy in the custody of his uncle and aunt and withdrawing his guidance and protection from him, his father had constituted his uncle his next friend under the act, and so made his consent to the adoption essential .

Petition for adoption of minor. C. P. No. 2, Phila. Co., March T., 1922, No. 2844.

*W. M. Hussie,* for petitioner; *John V. McCann,* for Thursa Warren.

*Ruby R. Vale,* for Simon P. Saunders et ux. and George Russ et ux. .

BARRATT, P. J., May 17, 1922.—This matter comes before the court upon the petition of Ella T. Saunders, the individual answer of Thursa Warren, and

Saunders's Adoption.

the joint answer of Simon P. Saunders and Martha Saunders, his wife, and George Russ and Lulu Russ, his wife.

As the proceeding was initiated by the petition, and since no replication has been filed, the matter may properly be disposed of upon the petition and answers, with the effect of holding true all the matters set up in the respective answers. This is a familiar rule, and it is sufficient to refer to Stoner v. Railroad Co., 229 Pa. 521, 525 (1911).

Such being the state of the record, from it we find the facts to be:

1. Harold Alonzo Saunders was born May 16, 1909.

2. That Harold Alonzo Saunders is the minor child of John L. Saunders and Elsie Saunders.

3. That the said John L. Saunders departed this life, intestate, on Dec. 5, 1921, his death having been caused by an accident on the Philadelphia & Reading Railway Company, while the said John L. Saunders was a passenger on its lines.

4. That Elsie Saunders, mother of the said Harold Alonzo Saunders, died sometime in the year 1911.

5. That subsequent to the death of the said Elsie Saunders, the said John L. Saunders married the present petitioner on June 29, 1912.

6. That the respondents, Simon P. Saunders and Martha Saunders, are the paternal grandparents of the said Harold Alonzo Saunders.

7. That the respondent, George Russ, is the brother of the said Elsie Saunders, and, therefore, is maternal uncle of the said Harold Alonzo Saunders, and the respondent, Lulu Russ, is the wife of the said George Russ.

8. That the respondent, Thursa Warren, is the first cousin of John L. Saunders, father of Harold Alonzo Saunders.

9. That from the time of his birth on May 16, 1909, until sometime in the year 1911, the minor, Harold Alonzo Saunders, was in the custody and control of his parents, John L. Saunders and Elsie Saunders, and so remained in their custody until the death of his mother, Elsie Saunders, occurring in the year 1911.

10. That from the year 1911 until about June 29, 1912, the said Harold Alonzo Saunders remained in the custody and control of his paternal grandparents, Simon P. and Martha Saunders.

11. That for nearly five years, to wit, from June 29, 1912, the date of the marriage between John L. Saunders and the present petitioner, Ella T. Saunders, the said Harold Alonzo Saunders (named Harold L. Saunders in the petition to this court) remained in the custody and control of his father and second wife until on or about May 10, 1917, when, at the instance and with the consent of the said John L. Saunders, his father, and Ella T. Saunders, his present wife and petitioner, the said Harold Alonzo Saunders was delivered into the custody, care and control of George Russ and Lulu, his wife, the said George Russ being brother of Elsie Saunders and maternal uncle of the minor, Harold Alonzo Saunders.

12. That the said minor, Harold Alonzo Saunders, remained in the care, custody and control of the said George Russ and his wife from May 10, 1917. The said Harold Alonzo Saunders, at the request of Ella T. Saunders, his stepmother, visited the said Ella T. Saunders during the Christmas holidays of 1921, and so remained for a period of about three weeks, at the termination of which time he returned to the said George Russ and his wife, in whose custody, care and control he still is.

13. That the respondents, George Russ and Lulu Russ, reside at or near Harrington, Kent County, in the State of Delaware.

1 D. & C.

14. That throughout the period in which the said minor, Harold Alonzo Saunders, resided with and was in the custody, care and control of his maternal uncle, to wit, from May 10, 1917, as aforesaid, his father, the said John L. Saunders, contributed practically nothing towards his keeping and maintenance, he having been reared and educated at the expense of the maternal uncle, George Russ.

15. That by reason of the death of John L. Saunders on Dec. 5, 1921, while a passenger on the Philadelphia & Reading Railway, the sum of $9000 has been recovered under the act of assembly in such cases provided, of which sum this petitioner is entitled to two-thirds and the minor to one-third, or $3000.

16. That on March 21, 1922, Ella T. Saunders filed a petition in this cause, praying leave to adopt the minor, Harold Alonzo Saunders, therein called Harold L. Saunders, according to the provisions of the acts of assembly in such case made and provided, thereby agreeing to confer upon the said minor all the rights of a child actually born to her, the said Ella T. Saunders.

17. That on April 8, 1922, upon petition presented by George Russ and Lulu Russ to the Orphans' Court of the State of Delaware, in and for Kent County, for that purpose, the Orphans' Court of Delaware, in and for said Kent County, duly made its decree, bearing said date, wherein and whereby, in substance and effect, it decreed the adoption of the minor by the said George Russ and Lulu Russ, conferring upon the said minor all the rights of a lawful and natural offspring of the said petitioners. A copy of the petition and decree, duly certified under the Acts of Congress, is attached to the joint answer above referred to.

18. That the respondent, George Russ, presented a second petition to the Orphans' Court of the State of Delaware, in and for the County of Kent, praying that The Peoples' Bank of Harrington, in the State of Delaware, be appointed guardian of the estate of the said Harold Alonzo Saunders, the prayer of which petition was, by decree, entered by that court on the said April 8, 1922, duly appointing the said The Peoples' Bank of Harrington guardian of the estate of the said minor, being first required to qualify for said office by the entry of a bond in the sum of $6000, which bond was duly entered by the said The Peoples' Bank of Harrington, Delaware, as surety. A copy of the said proceedings and the decree therein is duly authenticated under the Acts of Congress and is attached and made a part of the joint answer.

19. Whether the petitioner, Ella T. Saunders, is able to provide a home for the said minor, and is able to care for and maintain him in the manner conducive to his welfare, and will perform all the duties of parent toward him, are not admitted by the respondents, but do not call for a finding.

20. That the respondent, George Russ, is able to provide a proper home for the said minor, and is able to care for and maintain him in the manner conducive to his welfare and will perform all the duties of a parent toward him.

## Discussion.

This is a proceeding for adoption under the Acts of May 19, 1887, P. L. 125, and May 28, 1915, P. L. 580. The petition is presented by the stepmother of the child, a colored boy just thirteen years of age. The boy's father died on Dec. 5, 1921, as the result of a railroad accident. Recovery was had of the sum of $9000 from the railroad company, The Philadelphia & Reading Railway, and of this sum $3000 is the boy's share.

Saunders's Adoption.

The findings of fact state the essentials of the case, so far as the record shows. No testimony has been taken, and the findings are based on the petition and answers, excepting as to race, which, if material, may be rested on the undisputed statement of counsel.

The boy concerned was born on May 16, 1909, and resided with his father and mother until about two years old, when his mother died. His father then gave him into the care of his paternal grandparents, Simon P. and Martha Saunders, who had the care of him until his father remarried on June 29, 1912. He was by that time three years of age. His father took him back, and he was cared for and supported by his father and stepmother, this petitioner, for a little less than five years, when, on or about May 10, 1917, his father and stepmother delivered him to the care and custody of his maternal uncle and aunt, George and Lulu Russ, at or near Harrington, in Kent County, in the State of Delaware. Since so doing, the father and stepmother have done nothing for the support of the child, excepting that the father, during the period of almost five years that he lived thereafter, contributed $25, and the stepmother, this petitioner, $5, for the child, an average of about $6 a year, or 50 cents a month.

The care and custody of the child by the said maternal uncle and aunt was at the instance of the child's father in 1917, and has the approval of the lad's paternal grandparents and, of course, of the maternal uncle and the latter's wife. There is no pretence that the child has not had proper care. The acts of assembly require that the court, before decreeing the adoption of the child, shall be "satisfied that the welfare of such child will be promoted by such adoption."

It may be that with the acquisition of $6000, above recited, the petitioner, the boy's stepmother, may afford the colored child such opportunity as will "promote" his welfare. Nothing appears as to this, and it is purely matter of surmise and speculation. The share of $3000 going to the child as his own portion is or may be a distinct "promotion" of his welfare of itself, and the court is not authorized, nor would it be willing, to direct such a radical and vital change with the child as this petition contemplates until "satisfied" that the child's welfare will be promoted.

Nothing has been shown as to this. The boy is where his father placed him with the approbation of his near blood relatives. There is no averment that he has not proper care. In the exercise of its discretion reposed in it by the Act of 1915, the court, therefore, must refuse this petition.

Some interesting points of law suggest themselves in this case, but they do not require decision here, since this case is ruled by the discretion of the court as above.

The Act of May 28, 1915, P. L. 580, already mentioned, in section 7, requires the consent of the surviving parent, or, if none, of the next friend of the child, to the adoption. Just when a stepmother may be regarded as a surviving parent or next friend within the meaning of this requirement need not be determined in this case. Both she and the boy's father intrusted the lad for five years to the care and rearing by his maternal uncle in a distant town in another state. By so doing, and by their withdrawal from any guidance or protection of the child, they practically constituted the uncle the surviving parent or next friend, so it seems to this court. If such be the status of the uncle, his consent is essential to the present adoption. Moreover, the lad's paternal grandparents, Simon P. Saunders and Martha Saunders, will not be overlooked. The answers filed indicate a warm and constant interest on their part in the child's welfare. Some respect and regard to their attitude in this

1 D. & C.

proceeding seems appropriate under the statute and otherwise. Yet this uncle, these grandparents, far from consenting to the adoption proposed, resist it. See, in this connection, In re Adoption of Harry Bastin, Vandermis v. Gilbert, 10 Pa. Superior Ct. 570 (1899), wherein the maternal grandmother was recognized in her petition for the annulment of a decree of adoption; and see Holmes v. Derrig, 127 Iowa, 625 (1905).

Another interesting question suggested is that arising from the residence of the child in the State of Delaware. The decisions in the various states on this are not altogether satisfactory in clearness. In Arkansas and in Georgia, under their statutes, a residence of the child in the county of the proposed adoption seems essential. See Morris v. Dooley, 59 Ark. 483 (1894); Rives v. Sneed, 25 Ga. 612 (1858).

In some states the residence of the party petitioning for the adoption seems to be controlling. See Abney v. De Loach, 84 Ala. 393; Woodward's Appeal, 81 Conn. 152.

The Pennsylvania Act of May 4, 1855, P. L. 430, provided that the person desirous to adopt might present the petition in the county where he might reside. This, however, was held to be directory only in McQuiston's Adoption, 238 Pa. 304 (1913), and the case concerned parties who were all Pennsylvania residents, so that no question of jurisdiction as between states arose.

The question as to residence may require consideration when a controlling factor in the case.

The question whether the father and stepmother, petitioner here, had abandoned the child might well be considered, were there no objection otherwise to the proposed adoption; for if it were shown that this petitioner had been party to an abandonment of the child, that certainly would have a decisive influence against her present petition. The child for five years lived away from his father and his stepmother. They exercised no supervision over him, unless in the way of assuring themselves that he was being well brought up by the maternal relatives to whom they intrusted him. See, in this, Winans v. Luppie, 47 N. J. Eq. 302, reversing 37 N. J. Eq. 245; Von Beck v. Thomsen, 44 App. Div. (N. Y.) 373; Matter of Larson, 31 Hun (N. Y.), 539; In re Maude Fay Olson, 3 Ohio Nisi Prius, 304; Furgeson v. Jones, 17 Oregon, 204 (11 Am. St. Rep. 808; 3 L. R. A. 620); Nugent v. Powell, 4 Wyom. 173 (62 Am. St. Rep. 17; 20 L. R. A. 199).

Under the Pennsylvania Statute of May 19, 1887, § 1, P. L. 125, a parent neglecting or refusing to provide for a child for the period of one year or upwards loses his right to refuse consent; and see, also, section 7 of the Act of May 28, 1915, P. L. 580.

The opinion of Dixon, J., in Winans v. Luppie, 47 N. J. Eq. 302, is instructive, especially in the present case.

It was held not to have been abandonment where a father intrusts the care of the child for six years to the mother: Johnson v. Terry, 34 Conn. 259. The question is one of circumstance and intent, and where essential will be considered with the care due to it as vitally involving the welfare of the child: Peterson's Estate, 212 Pa. 453 (1905).

The minor in the present case was adopted in the State of Delaware on April 8, 1922, by one of the present respondents, George Russ, his maternal uncle, by decree of the Orphans' Court of Kent County, State of Delaware; and on the same day the Delaware court appointed The Peoples' Bank of Harrington, in the State of Delaware, guardian of the minor's estate. It is contended by the respondents that under the Full Faith and Credit Clause of the United States Constitution, art. IV, § 1, all the courts must respect that

judicial action. The petition in the present case was filed on March 21, 1922, a short time prior to the action of the Delaware court.

To some extent the decree of adoption in another state is binding under the United States Constitution. See Hood v. McGehee, 189 Fed. Repr. 205; 237 U. S. 611.

As the prayer of the petition in this case is refused, this aspect will not be considered.

It is enough to say, under the Statute of 1915, that the court is not satisfied that the welfare of the child will be promoted by taking him from the relative with whom he was placed by his own father. Moreover, the child is thirteen years of age. His own desires should receive some consideration. In some states—not all—the statutes provide that the child himself must consent when above a certain age, usually twelve or fourteen. See 1 Corpus Juris, Article Adoption, page 1385. No wish on his part for a change has been made to appear. Petition refused.