## HERMAN LACKMAN AND HENRY BACKEN *v.* JOSEPH M. WOOD, WILLIAM G. WOOD, AND EMILY WOOD.

EMANCIPATION OF A MINOR.—A father may emancipate his minor child, and when emancipated the child is freed from parental control and is in all respects his own man.

MINOR MAY TAKE AND HOLD VACANT LANDS.—An infant may become a disseizor, and whether emancipated or not, may take possession of vacant lands and hold them in his own right, the same as an adult.

PROOF OF THE EMANCIPATION OF A MINOR.—Evidence that a minor was in the habit of doing business on his own account and in his own name, and of becoming responsible for his own supplies, is admissible for the purpose of proving his emancipation.

ESTOPPEL AS TO INFANTS.—The doctrine of estoppel has no application to infants.

ESTOPPEL MUST BE FOUND OR GIVEN, ETC.—It is erroneous for the Court to assume, in the progress of a trial, for the purpose of deciding on the admissibility of testimony, that an estoppel exists; but the fact of an estoppel must be found or given before any of the consequences of an estoppel can be claimed.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. F. Swift,* for Appellant.

An actual entry by an infant into another's freehold, gains the possession, and makes him a disseizor. (Bacon's Abridgment, title Infancy and Age, F, G, and particularly H; Co. Litt. 357; Hawk. P. C., Chap. 64, sec. 35.)

An infant can hold and occupy lands in the United States. (4 Serg. & Rawle, 207 ; 3 New Hamp. 23.)

He may be, by his father, emancipated, and when he is so emancipated he is entitled to the fruits of his labor. (2 Mass. 415 ; 4 Mass. 97, 675 ; 6 Binney, 273 ; Greenleaf, 33 ; 4 Binney, 492 ; 2 Bailey, 497 ; 3 Pickering, 201 ; 11 Vt. 258, 477 ; 2 Blackford, 449 ; 11 New Hamp. 191 ; 7 Cow. 92.)

The emancipation may be proved by parol. (5 Vt. 556 ; 3 Ibid, 290.)

The intention of a father to emancipate his child is a question of fact, and in the absence of direct proof, may be inferred from circumstances, etc. (6 Cushing, 458 ; 2 Black, 449.)

It was material and proper for Joseph M. Wood to show those facts for the purpose of proving his emancipation, and for the purpose of showing that he was upon the land before his father came there.

Those facts tend to show such emancipation ; and if he was emancipated then, he could acquire the possession of lands and hold them in his own right. (4 Serg. & Rawle, 207 ; 3 New Hamp. 23.)

If he were really emancipated then, he could enter upon the possession of White, the grantor of the plaintiffs, and disseize him and the freehold created in himself, he could not convey, during his minority ; or, at all events, if he did convey it, the act would be voidable.

*G. F. & W. H. Sharp*, for Respondents.

A complete answer to appellants' brief is, that because a father allows his infant son to support himself, and enjoy the fruits of his labor, this does not prevent the father from controlling the personal conduct of the son so as to prevent either his committing or his continuing a trespass upon another's land ; and although after a disseizin worked by an infant has, through lapse of time, ripened into a perfect title, such title would be beyond the father's control ; yet, until then, the father, by virtue of his having the custody and control of his infant, must be able, against the infant's consent even, to pre-

vent or terminate the ouster, trespass, nuisance, waste, or any other injury of the infant to another's land.

Again : "If a man carries an infant into the lands of another, and there claims the lands to the use of himself and the infant, yet the infant seems no disseizor, because he made no claim of it himself, and then shall not be charged with the tort of another person." (Bacon's Abridg., title Infancy and Age, H.)

The repondents say that the Court below did not err in excluding the testimony of A. J. Gladding. This testimony was properly rejected, because it ignored the father's consent. Even according to the doctrine contended for by appellants, the acts of the infant, unless approved of by his father, cannot prove or tend to prove emancipation by the father.


By the Court, SHAFTER, J.

This is an action of ejectment, brought to recover certain lands in the "Western Addition," so called, situate in the City and County of San Francisco.

The defendants answered severally. William G. and Emily Wood denied all the allegations of the complaint, and the answer of Joseph M. Wood, in addition to a general denial, alleges the title to be in him.

The plaintiffs, at the trial, in proof of their right, relied upon a lease executed by one White to the defendant, William G. Wood, on the 25th day of November, 1851, and upon an assignment to them, by White, of the reversion; and upon the fact that the term created by the lease had expired before the commencement of the action.

For the purpose of bringing the defendant, Joseph M. Wood, within the operation of the facts named, the plaintiff introduced evidence tending to prove that Joseph M. Wood was the son of William G. Wood, and that, at the date of the lease, he was about seventeen years of age, and that Joseph M., so being a minor, went upon the lands as a member of his father's family, and not otherwise.

We consider that the plaintiffs might have safely rested

their case upon this testimony; but they went further, and introduced evidence, not so much for the purpose of making out a good case *prima facie* in their own favor against J. M. Wood, as for the purpose of showing that he was estopped *in pais* from alleging that the land was his.

The testimony upon the subject of the estoppel was drawn by the plaintiffs from their witness, Williams, who testified that White, the plaintiff's assignor, in company with William G. and Joseph M. Wood, called upon him in June, 1851—five months before the lease was in fact executed—and that in the course of a conversation that ensued between the witness, William G. Wood and White, White exhibited to the witness "a roll of papers as the plan of his land, and introduced the Woods, father and son, to the witness, and said they were to be the neighbors of the witness; that he, White, had leased the premises to Wood and his family, and hoped that he, the witness, would find them agreeable neighbors."    *    *    *    * "Joseph M. Wood stood by his father, and said nothing."

The plaintiffs, having closed their case, Joseph M. Wood, as we gather from the record, undertook to sustain his plea of title on the ground—first, that he was emancipated by his father prior to the execution of the lease, November 25th, 1851; second, that prior to the date of the lease, and after his emancipation, he entered upon the premises in his own right, and that he has ever since held and occupied them, adversely to the lessee, to White, and all other parties.

For the purpose of maintaining this defense, A. J. Gladding was called as a witness, and the defendant offered to prove by him "that whilst living on the premises in controversy, both before and after William G. Wood went upon the place, the defendant, Joseph M. Wood, was in the habit of doing business on his own account and in his own name, and that he purchased his own supplies of provisions, and became responsible for them."

This testimony was objected to as irrelevant and immaterial. The testimony was excluded by the Court, and the defendants excepted.

There was no evidence that the plaintiffs, or those under whom they claimed, had ever been in possession of the premises, and none to show that the premises belonged to them by title derived from the original proprietor.

1. An infant may libel, slander, assault, convert, and disseize. He can contract only for necessaries, but he can commit torts as efficiently as an adult; and against injuries of that character his nonage will afford him no protection. (2 Hill, Torts, p. 605.) "An actual entry by an infant into another's freehold gains the possession, and makes him a disseizor." (3 Bac. Ab. p. 592.)

From these principles it would seem to follow that if an infant, whether emancipated or not, should enter upon vacant lands and take and hold possession of them in his own right, his occupancy would be followed with all the consequences which would attend a like possession on the part of an adult. But a decision upon that question, in its breadth, is not necessary to a decision of the point now under discussion.

The offer made on behalf of Joseph M. Wood was in effect to prove that he had been emancipated by his father prior to the date of the lease, and that subsequent to the emancipation, and before the execution of the lease, he entered upon and took possession of the premises in his own right, and that this state of things, so inaugurated before the lease, continued to subsist thereafter.

We consider that the facts embodied in the offer would, if proved, have constituted, as to Joseph M. Wood, a good defense to the action.

The power of a father to emancipate his minor child cannot be questioned; nor can there be any doubt as to the effect of such emancipation upon the relations of the persons who are parties to it. The child is freed by emancipation from parental control; he can claim his earnings thereafter as against his father, and is in all respects his own man.

Emancipation is defined as "An act by which a person, who was once in the power of another, is rendered free," and the adjudged cases show that the doctrine of emancipation, as

actually administered, is not less comprehensive than the definition. (*Morse* v. *Welton*, 6 Conn. 547 ; *Jenney* v. *Alden*, 12 Mass. 375 ; *Chilson* v. *Phillips*, 1 Vt. 41 ; *Gale* v. *Parrott*, 1 N. H. 28 ; *Keen* v. *Sprague*, 3 Greenl. 77 ; *Plummer* v. *Webb*, 4 Mason, 380 ; *Burlingame* v. *Burlingame*, 7 Cow. 92.)

If then the evidence offered was inadmissible, it was not for the reason that the main proposition to be proved was devoid of legal significance and value, and it remains that the ruling of the Court excluding the testimony can be justified only on one of two grounds : first—that the evidence had no tendency to prove the proposition ; or, second—that the defendant was effectually estopped from proving it at the time when the evidence was offered and rejected.

The facts embraced in the offer, in so far as they relate to the question of emancipation, were secondary and circumstantial ; and in so far as the offer relates to the question of Joseph M. Wood's personal occupation of the premises, the testimony offered must be considered as positive and direct.

On the tendency of the direct evidence to prove the defense in one of its branches, no question can be made, and as to the tendency of the facts enumerated in the offer to prove the emancipation asserted, we entertain no doubt. Every relation among men, whether public or private, may be said to tell its own story—that is to say, it is followed by certain sequences that argue the existence of the relation. If a father in fact emancipates his minor child, all observation and experience would lead us to expect corresponding changes in their intercourse with and in their treatment of each other. The facts named in the offer in question are not only the natural, but the known and established incidents of the emancipation which the defendant, Joseph M. Wood, was interested and offered to prove. (*Canovar* v. *Cooper*, 3 Barbour S. C. 115 ; *Stiles* v. *Granville*, 6 Cush. 458 ; *Clinton* v. *York*, 26 Maine, 167 ; *Chase* v. *Smith*, 5 Vt. 556.)

Nor do we consider that the defendant Joseph M. Wood was estopped by the testimony of the witness Williams from proving the emancipation and entry asserted at the bar.

The doctrine of estoppel has no application to infants. (*McCoon* v. *Smith*, 3 Hill, 147; *Brown* v. *McCune*, 5 Sandford, 224.) In the latter case Mr. Justice Sandford, in delivering the opinion of the Court, says: " In respect to the estoppel we are not aware that any case has gone the length of holding a party estopped by anything he has said or done while he was under age. And we think it would be repugnant to the principle upon which the law protects infants from civil liabilities in general. It is true that Courts of equity have sometimes refused relief on the ground of fraud or suppression of the parties seeking it, while they were minors; and we do not deem it necessary to dissent from those decisions. At the same time we are clear that the doctrine of estoppel is inapplicable to infants. A contrary doctrine would overturn the whole law relative to the contracts of infants."

But even if infants were under the law of estoppel, still neither they nor anybody else is estopped by mere evidence tending to prove an estoppel. The facts of the estoppel must be found or given, before any of the consequences of an estoppel can be claimed. When the defendant's testimony was offered and rejected, the trial was still in progress, and the Court could not properly assume, for the purposes of judgment on the interlocutory question presented, that the facts of the estoppel would be found by the jury.

There is another ground upon which the counsel of respondent seek to vindicate the ruling of the Court now in question. It is stated in the brief as follows: " The offer was too broad as to time. What the father allowed the infant to do after the father lived on the premises, or indeed after the father had taken a lease, was altogether immaterial."

Assuming, for the purposes of argument, that both the emancipation of the son and his entry upon the premises in his own right, must, in order to be available, have antedated the lease to, and entry of the father, (a point by no means free from doubt,) we consider that the question whether the son had been so emancipated or not, rested, in the absence of positive testimony, upon presumptions to be drawn from the

mutual conduct of the parties during the whole of the residue of the nonage of the son. If the son, prior to the lease, was in possession of the premises, and acted independently of his father, in fact, until the lease was given, the circumstance that he continued so to act, and without parental interference, until he attained his majority, would add weight to the presumption that he had been emancipated in the first instance, and was therefore admissible.

Whether the alleged emancipation was simulated merely, or brought forward as an "after thought" upon fabricated testimony, are questions with which the state of the record excuses us from dealing.

Judgment reversed and new trial granted.    ✓