[S. F. No. 7943.  In Bank.—May 9, 1917.]

## AETNA LIFE INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ARTHUR FELIX RIECK, Respondents.

WORKMEN'S COMPENSATION ACT—PARENT AND CHILD—MINOR WORKING FOR FATHER NOT AN EMPLOYEE.—An unemancipated minor child, of the age of nineteen years, who lived with his father on the latter's ranch and performed services thereon as directed by the father, without any agreement between them for compensation, is not an employee of the father within the meaning of section 14 of the Workmen's Compensation Act.

ID.—EMANCIPATION OF MINOR—PAYMENT OF SMALL SUMS TO MINOR.— The emancipation of the son is not established by the fact that the father from time to time gave the son small sums of money, notwithstanding they each testify that these sums were on account of payment of wages.

APPLICATION for a Writ of Certiorari to annul an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Redman & Alexander, for Petitioner.

Christopher M. Bradley, for Respondents.

HENSHAW, J.—Review of an award of the Industrial Accident Commission. Arthur Rieck was discovered on his father's ranch, unconscious and with a fractured skull. He was at the time a minor of the age of nineteen years, and was living with his parents at their home on the ranch. He did such work on the ranch as he was directed to do by his father. No one was an eye-witness to his accident, but the evidence points with strong probability to the fact that while riding a horse to round up mules in a field on the ranch he was thrown and struck on his head. The evidence unquestionably, then, supports the commission's findings that his injury arose out of the services which he was rendering to his father. The vital question is whether under the evidence he was an employee within the meaning of our law. The case

arises under the demand of the father against the petitioner for the payment of medical and other expenses incurred by the father and growing out of this injury to his son. The Aetna Life Insurance Company had issued its policy, protecting the father against such claims on the part of his employees. This present claim was pressed upon the ground that the son was such an employee and the commission so held, making its award accordingly.

Section 197 of our Civil Code provides that, ''The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings.'' In this class belongs Arthur Rieck, and unquestionably unless there had been some legal change in the status of father and son, each and both were subject to the provisions of this code section and the provisions of section 196 of the same code, which declares that ''The parent entitled to the custody of a child must give him support and education suitable to his circumstances.'' Section 14 of the compensation act defines an employee as a ''person in the service of an employer as defined by section 13 hereof under any appointment or contract of hire or apprenticeship express or implied, oral or written, including aliens and also including minors.'' In this connection section 1965 of the Civil Code defines a contract of employment in the following language: ''The contract of employment is a contract by which one, who is called the employer, engages another, who is called the employee, to do something for the benefit of the employer, or of a third person.''

The evidence upon this matter (that of the father) is as follows:

''Q. What was the agreement or arrangement between you and your son with reference to his employment?

''A. There was really no arrangement; he is not of age, and simply works for what I tell him, and there was no contract or agreement whatever between us; he does whatever I tell him to do. . . .

''Q. Your book does not show any payments made to him by check or cash?

''A. I have no record of that at all. He is not of age. His wages belong to me; I don't have to pay him any wages. . . .

"Q. How does it happen that you never had any charge against Felix in this book?

"A. He is my son, and I am supposed to furnish him everything until he is of age."

It would seem that this law and this evidence were conclusively determinative of the matter against the award of the commission. But the argument in support of the award is that a minor is invested with the power to make a contract of hiring under sections 33 and 34 of the Civil Code; that section 14 of the compensation act above quoted includes in its definition of employees minors; that from the evidence the commission was justified in finding an implied contract of service; that such an implied contract of service will support this award; that this implied contract of service need not be for a fixed wage, but may be upon the basis of the usual payment for such services, or upon the expectations of the parties; that therefore any testimony which warrants the inference that services were rendered under such expectations and were accepted by the other party with knowledge, actual or constructive, of such expectations, is sufficient to establish the relationship of employer and employee; and finally, that herein it is "notable" that both father and son are insisting that the relationship existed, while it is only an outstanding third party—the Insurance Company—which is denying it.

It is indeed notable that father and son have combined in their demand against the Insurance Company, but it has not the slightest persuasive value as tending to establish the relationship which they claim to have existed. Their interests in this particular action are identical, and together they are working for a common end. But aside from this, the fault and fallacy of respondents' argument will at once become apparent when it is pointed out that the reasoning upon which respondents rely and the authorities which they bring to the support of that reasoning (where the relationship between parent and minor child is involved) all have to do with the case of an emancipated child, who has by virtue of that emancipation become entitled to contract for himself.

We need not enter into any lengthy discussion of what acts or omissions will effectuate the emancipation of a child, for the simple reason that no emancipation can be here asserted, and the father's testimony, showing rather an un-

usually clear conception of his rights and corresponding duties, is an absolute denial of emancipation. "There was no contract or agreement whatever between us. . . . He does whatever I tell him to do. . . . His wages belong to me. I don't have to pay him any wages. . . . He is my son and I am supposed to furnish him everything until he is of age." Suffice it, upon the question of emancipation, to quote from our own case of *Lackman* v. *Wood*, 25 Cal. 147, and to refer to 25 Cyc. 1672. In *Lackman* v. *Wood* it is said:

"The power of a father to emancipate his minor child cannot be questioned, nor can there be any doubt as to the effect of such emancipation upon the relations of the persons who are parties to it. The child is freed by emancipation from parental control; he can claim his earnings thereafter as against his father, and is in all respects his own man.

"Emancipation is defined as 'An act by which a person, who was once in the power of another, is rendered free,' and the adjudged cases show that the doctrine of emancipation, as actually administered, is not less comprehensive than the definition."

Nor, finally, does the fact that the father from time to time gave the son small sums of money, even though both father and son should testify that these sums were on account of payment of wages, at all militate against the incontrovertible fact that the son had not been emancipated. A son of nineteen years of age was surely entitled to some spending money, and as his earnings belonged wholly to his father, it would be strange indeed if his father did not give him such sums for his own purposes. Many fathers are called upon to do the same thing, and many, to encourage their sons to form habits of industry and frugality, and "to learn the value of money," make these donations dependent to a greater or less extent upon the conduct and services of the child. But such payments in no sense work an emancipation of the child himself. (Schouler on Domestic Relations, 5th ed., sec. 267; *Arnold* v. *Norton*, 25 Conn. 92.)

The award is therefore annulled.

Melvin, J., Shaw, J., Sloss, J., and Angellotti, C. J., concurred.