602

Tande (Lyle), Plaintiff, vs. Vernon County, Defendant.
    Tande (Otto), Plaintiff, vs. Same, Defendant.
Baley, Plaintiff, vs. Vernon County, Defendant: Tande
    (Lyle) and another, Impleaded Defendants.
French, Plaintiff, vs. Same, Defendant: Same, Impleaded
    Defendants.

*November 8, 1937—February 15, 1938.*

604

For the plaintiffs and Lyle Tande, impleaded defendant, there were briefs by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker* and *Daniel H. Grady*.

For the defendant, Vernon County, there were briefs by *M. Gulbrandsen* of Viroqua and *Hale & Skemp* of La Crosse, and oral argument by *Mr. Gulbrandsen* and *Mr. Q. H. Hale*.

The following opinion was filed December 7, 1937:

MARTIN, J.   It appears that on the night of August 5, 1935, the eastern part of Vernon county experienced an unusual rainfall, described by some witnesses as a cloudburst.   This rainfall washed out bridges and culverts in the county highway system.   It did considerable damage to some of the roadbeds.   Where the accident in question occurred, about six miles southeast of the village of Hillsboro, on

County Trunk EE, the rainfall washed out a steel culvert, thirty feet long and about thirty inches in diameter, leaving a void about seven feet in depth and from eight to ten feet in width, across the full width of the highway. The road at this point ran in a generally north-and-south direction. It is a gravel road about twenty-four feet wide. The highway intersects a ravine which occasioned the location of the steel culvert. The roadbed was level and of a uniform height, both to the north and south of the portion which had been washed away by the storm. On the morning of August 6th, the patrolman was notified of the washout. He had several like it on his patrol of fourteen miles. He immediately went to the washout in question and strung a wire across the road, both north and south of the void, and on each wire hung a red flag, approximately sixteen inches square, so that the flag hung down from the wire across the center of the road and about three feet above it. Some witnesses testified that these red flags were so attached to the wire that they would not move on the wire to the east or the west. There was nothing to prevent the flag from becoming wound around the wire. After the storm on the night of August 5th and 6th, Lyle Tande had driven on various highways out of Hillsboro, but not on County Trunk EE. He had not heard of the washout in question. The other roads over which he had traveled were all right. On the night of August 10, 1935, at about 8 o'clock, Lyle Tande, driving a Ford coupe owned by his brother, Otto Tande, started from Hillsboro to deliver some ice cream to Valton, Wisconsin, for his brother-in-law, Ivan Mitchell. The ice cream was put in the rumble seat of the Ford coupe. Ray French and Keith Baley were in the seat with Lyle Tande. Ray French sat in the middle and Keith Baley on the right side. It appears that Lyle Tande had driven an automobile for four or five years and had driven his brother's car before. The place where the accident

occurred is between five and six miles from Hillsboro in Vernon county. It was a dark night, but the lights on the car, which had been recently tested and were in perfect condition, had been turned on. The brakes were in good condition. The windshield was clear. The testimony describes the car as being "in splendid working order." The road was dry. There had been no oil or other substance used to cover the graveled surface of the roadbed. Tande and his guests, French and Baley, were traveling in a southerly direction upon County Trunk EE. It appears that there were many hills and bends in the road between Hillsboro and the point of the accident, but no washouts. There were some red flags at different places as a warning not to drive too near the edge of the road. The last mile and one-half to two miles from the point of the accident, there were no flags. The three occupants of the car testified that Tande drove between twenty-five and thirty miles an hour; that as they approached the washout, Lyle Tande had both hands on the wheel; that he was watching straight ahead; that the windshield was clear; that there was no wire or flag across the road. The county makes no claim of having placed any barrier or other sign of warning to protect users of the highway other than the wire and red flag above referred to. Tande testified that he saw a black line when the car was within ten or fifteen feet of the washout. He hollered to French and Baley to brace themselves. He applied the foot brake and French pulled the emergency brake just as the car plunged into the washout. The occupants of the car testified that just before the brakes were applied, they were traveling twenty-five to thirty miles an hour, and that upon application of the brakes, the speed had been reduced to between five and ten miles an hour as the car went into the washout. The occupants of the car each testified that they were looking directly ahead; that there was nothing to interfere with their vision; that there

was no red flag on a wire or other signal to indicate possible danger. The plaintiff, Baley, testified that he saw a red flag against a white post located a considerable distance to the west of the traveled portion of the highway. This was just immediately before the car went into the washout. One witness called by the county testified that as late as 5 o'clock in the afternoon of August 10th, she saw a red flag suspended from a wire on the north side of the washout. She testified that at that time the flag was about in the center of the highway and between two and one-half and four feet above the ground. No one testified to having seen the flag there later in the afternoon or evening, and we have the positive testimony of the three occupants of the car that the flag was not there at 8:30 p. m., which they fix as the time the accident occurred. Mrs. Agnes Cannon testified that she arrived at the scene of the accident about twenty minutes after the car went into the washout. The three injured boys were still at the scene of the accident. While there, she found a broken wire at the roadside. There was a red flag on the wire. She was asked:

"Q. What condition was that flag in? A. That flag was all rolled up. About twenty years ago the music teachers used to roll their music up. It was just a roll, the flag was rolled around the wire.

"Q. Did you notice how the flag was attached to the wire? A. There was a hem about two, three inches deep on the flag and the wire was inserted through that hem.

"Q. Was the flag fastened to the wire? A. Not that I could see. It could slip back and forth.

"Q. Were there any little pieces of wire that riveted on the main wire? A. I didn't notice any.

"Q. Did you carefully examine it? A. I did."

The patrolman, Bernard Olson, testified that he had served as a patrolman for ten years; that it was his duty to look after the maintenance and repair of County Trunk EE;

that he lived two and one-half or three miles from the point of the accident; that there had been no rain between the morning of August 6th and the night of the 10th when this accident happened. He testified that on the morning of August 6th, he went to the scene of the accident and attached a wire to act as a barrier. It was a hay-baling wire that he stretched across the road, seventy-five feet from the edge of the washout on the north side. He testified that he fastened a red flag about sixteen by sixteen onto the wire; that there was a slit in the cloth through which the wire ran, "but I fastened it with wire so that it couldn't slide." That was on the morning of August 6th.

"Before the accident I had not gone out there at night to see to what extent the wire and the flag which I had put up were visible."

He further testified:

"Between August 6th and August 10th I made no attempt to fill up the washout with dirt or gravel or to erect boards that would project up above the surface of the highway to warn traffic, and I put no lanterns or torches on it. I had only the two red flags home that I used on the north and south wires. . . . I made no attempt between August 6th and 10th to get any lanterns or torches, or any more red flags or any signs. I didn't call the highway department or any of its officers during that four-day period to get any signaling devices."

He further testified that there was an intervening road within a mile and one half north of the washout "where they could turn off and go around this place, but I didn't put any sign up detouring people around that way."

Clarence Hoff, the county highway commissioner, testified that:

"On August 6th I knew there had been numerous washouts throughout the county, and we bought lanterns and torches, but I did not give Mr. Olson, the patrolman, any in-

structions about buying lanterns and torches. They had been instructed before to put up lights, but I don't think he had more than one or two at the time.

"*Q.* You have always instructed your patrolmen, if there is a washout, to put up lights? *A.* Yes.

"*Q.* That rule had been imparted by you to all of your patrolmen in August, 1935, including Bernard Olson? *A.* Yes.

"*Q.* And you wanted them to obey that order at all times, did you not? *A.* Yes."

Mr. Hoff further testified that the supply of torches and lanterns was exhausted the first day following the heavy rainfall on the night of August 5th; that the county had bought torches and lanterns at stores where they could get them, but they did not send anyone outside the county to get torches and lanterns. He said he thought Mr. Olson had some lanterns and torches on hand.

A Mr. Rott, called by the county, testified as to a conversation he had with the plaintiff Baley at the doctor's office the night of the accident in question and shortly after it had occurred. He testified that Baley said the car was going forty-five miles an hour before the accident. He also said that a Mr. Cannon was present when this conversation is alleged to have taken place. Baley denies having made any such statement, and Mr. Cannon testified that he did not hear it.

In determining whether the evidence discloses any negligence on the part of Lyle Tande, we must keep in mind that he had the right to assume that the public highway was reasonably safe for travel. *Raymond v. Sauk County,* 167 Wis. 125, 127, 166 N. W. 29; *Duby v. Columbia County,* 194 Wis. 172, 215 N. W. 819. He had the right to assume that if there was a washout, the road would be blocked off or adequate warnings erected. The jury found the county negligent in failing to erect a sufficient barrier or warning signal

across the highway, north of the washout. Still, the jury found Tande negligent as to lookout because he failed to see a barrier or signal which they had found was insufficient to give warning. Upon the uncontradicted testimony of the three occupants of the car, there was no red flag hanging above the traveled portion of the highway. This evidence was corroborated by the testimony of Mrs. Cannon, that when she arrived at the scene of the accident, she found a wire on the roadside around which there was wound a red flag. We are forced to the conclusion that at and for some time prior to the accident, there was no barrier or signal located within the traveled portion of the highway, north of the washout.

This is quite different from the ordinary case of an obstruction in the highway or the case of a collision with any object upon it. We are justified in saying, as a matter of common experience, that in driving upon a graveled highway at night, approaching a depression or washout such as we have in the instant case, the void would simply reflect a dark line or space across the traveled portion of the highway. This would be true until there was a very near approach to the washout. We have carefully examined all the evidence, and have reached the conclusion that there is no credible evidence to sustain the jury finding of negligence on the part of Lyle Tande with respect to speed and lookout. The plaintiffs' motion to change the two answers from "Yes" to "No," and to strike the answers "Yes" to subdivisions (a) and (b) of the fourth question, and to change the per cent of negligence on the part of the county from fifty per cent to one hundred per cent, and for judgment upon the verdict with the answers so changed, should have been granted. The same conclusion applies on the separate appeal of Lyle Tande from the judgments against him for contribution in the cases of Keith Baley and Ray French against the county,

and in which he was impleaded as a party defendant. The cross complaints must be dismissed.

Upon the appeal of the county from the judgments against it in the French and Baley cases, the appellant contends that the guests in the car, French and Baley, were guilty of negligence in that they failed to object to the speed at which the car was driven. The jury found no negligence on the part of the guests. In view of our conclusion in the Lyle Tande action, no more need be said.

On the plaintiffs' motion to review, in the French and Baley actions, the contention is made, first, that the fathers of Baley and French, prior to the commencement of these actions, had, in writing, assigned all claims which they might have to their respective sons; that therefore the plaintiffs, both being minors, were entitled to recover medical expenses. Under sec. 81.15, Stats., the fathers had no right of action against the county. That part of the statute applicable, provides:

"If any damage shall happen to any person, his team, carriage or other property by reason of the insufficiency or want of repairs of any bridge, sluiceway or road in any town, city, or village, the person sustaining such damage shall have a right to sue for and recover the same against any such town, city, or village, provided, however, that no action shall be maintained by a husband on account of injuries received by the wife, *or by a parent on account of injuries received by a minor child. . . .*"

Secondly, the contention is made that French and Baley were emancipated minors and therefore entitled to recover the items of medical expense. Both boys were still in the high school. They attended the same the school year preceding the accident and the school year following. During the vacation time, they did such work as they were able to procure, and no doubt retained a part or all of their earnings

from such employment; but we cannot conclude from this meager evidence, and hold, as a matter of law, that their status was that of emancipated minors. In *Knutson v. Fenelon,* 200 Wis. 261, 265, 227 N. W. 857, the court said:

"Although a minor may be liable in an action brought by his physician to recover for medical services furnished, it is also true that the parents of the minor are also liable for such services. *There is no evidence in this case that the plaintiff was emancipated.* . . . It seems clear that a minor should not be permitted to recover the amount of the expenses incurred for medical services, and the like, in actions of this nature in the absence of proof that the minor alone is responsible for such expenses by reason of emancipation, death of the parents, or that they had been paid by the minor. Where as here the record is silent with reference to the sole responsibility of the minor, such recovery should not be permitted."

In the case of Lyle Tande, the evidence clearly shows his, emancipation within the rule of *Caskey v. Peterson,* 220 Wis. 690, 263 N. W. 658. He is entitled to recover for the medical expenses which he incurred, in the sum of $71.

In the Otto Tande case, no reason is advanced why that judgment should not be affirmed. He was the owner of the car involved in the accident. The damages thereto were assessed at $140.

Apparently, the impleaded defendant, Ivan Mitchell, was dropped from the case. At least, there is no judgment against him or in his favor.

In view of the foregoing conclusions, it is unnecessary to consider other assignments of error.

*By the Court.*—The judgment in the case of *Lyle Tande, Appellant, v. Vernon County, Respondent,* is reversed, and cause remanded with directions to change the answers in the special verdict as indicated in the opinion, and to enter judgment in favor of the plaintiff, against the defendant, in the sum of $2,571.

In the case of *Otto Tande, Respondent, v. Vernon County, Appellant,* the judgment is affirmed.

In the case of *Keith Baley, Respondent, v. Vernon County, Appellant: Lyle Tande and another, Impleaded Defendants,* upon the separate appeal of Lyle Tande from the judgment of contribution against him, that part of said judgment is reversed with directions to dismiss the cross complaint. In all other respects, judgment is affirmed.

In the case of *Ray French, Respondent, v. Vernon County, Appellant: Lyle Tande and another, Impleaded Defendants,* upon the separate appeal of Lyle Tande from the judgment of contribution against him, that part of said judgment is reversed with directions to dismiss the cross complaint. In all other respects, judgment is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 15, 1938.