[Civ. No. 4995.   Fourth Dist.   Apr. 5, 1956.]

JOE PERKINS, a Minor, etc., et al., Appellants, v. ISADORE C. ROBERTSON, Respondent.

538

James A. Gardner, in pro. per., for Appellants.

Borton, Petrini, Conron & Brown for Respondent.

CONLEY, J. pro tem.*—This is an appeal by minor plaintiffs, Joe Perkins and Maurice Garnes, from a judgment in favor of their stepfather, Isadore C. Robertson, after the sustaining without leave to amend of his demurrer to their third amended complaint. The litigation grew out of an automobile wreck in which Ethel Mae Robertson, wife of the defendant and mother of the plaintiffs, was killed and Maurice Garnes injured. By express stipulation of the parties it is established for all purposes of the appeal that the defendant, whose negligence and wilful misconduct are blamed for the casualty, was *in loco parentis* to both plaintiffs at the time of the accident and also when the action was filed.

This appeal requires answers to the following questions: May an unemancipated or a "partially emancipated" minor sue a parent, or one *in loco parentis*, for personal injuries proximately caused by simple negligence, or by wilful misconduct? (2) May heirs of a decedent, consisting of her children, sue another of her heirs, her husband, for her wrongful death, and if so, may recovery be based on his negligence, or on his wilful misconduct?

In the first cause of action in the third amended complaint, Maurice Garnes sues as an unemancipated minor injured as the proximate result of the negligence of the defendant; in the second cause of action as an unemancipated minor for his wilful misconduct; in the third cause of action as a "partially emancipated" minor injured by his negligence; in the fourth cause of action as a "partially emancipated" minor for his wilful misconduct. The fifth cause of action is brought by the two minor plaintiffs as the children and heirs of Ethel Mae Robertson on the theory that the defendant proximately caused her death by his negligence; the sixth cause of action

*Assigned by Chairman of Judicial Council.

is based on his wilful misconduct; the seventh cause of action alleges that the plaintiffs were "partially emancipated" minors and that the death of their mother was caused by the negligence of defendant; and the eighth cause of action is brought by them as "partially emancipated" minors on the allegation that defendant was guilty of wilful misconduct.

It should be noted in connection with the demurrer to and motion to strike from the first amended complaint that the court eliminated the allegation that at the time of the accident defendant maintained a valid policy of insurance for public liability and property damage.

The trial court's ruling sustaining the demurrer to the first cause of action without leave to amend was correct. █ *Trudell* v. *Leatherby*, 212 Cal. 678 [300 P. 7], establishes the law in this state that an unemancipated minor child cannot sue his parent, or one who stands toward him *in loco parentis*, for a tort based on simple negligence; in the opinion the reason for the rule is thus stated:

" '. . . The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interest of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.' (20 R.C.L. 631.)

" 'Any proceeding tending to bring discord into the family and disorganize its government may well be regarded as contrary to the common law, and not to be sanctioned by the courts. Such conflict would arise by recognizing the right of a minor to bring his personal action against the father to recover damages for torts alleged to have been committed by the father in the course of the family relation and resulting in personal injury to the child.' "

The principle was recognized in *Myers* v. *Tranquility Irr. Dist.*, 26 Cal.App.2d 385 [79 P.2d 419], in *Baugh* v. *Rogers*, 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043], and in the recent case of *Emery* v. *Emery*, 45 Cal.2d 421, 428-429 [298 P.2d 218].

Appellants' argument that the law ought to be changed should properly be addressed to the legislative branch of our government rather than the judicial; for the rule above stated is firmly established in our state by binding precedents; we shall accordingly not discuss the cases cited from other jurisdictions where an opposite or differing view is maintained. In passing, however, it is proper to say that the trial court

ruled soundly in requiring the elimination of all reference to public liability and property damage insurance in the pleadings. For the existence of insurance "gives no cause of action where one did not exist before." (*Emery* v. *Emery, supra,* 45 Cal.2d 421, 431.)  In a tort action an insurance company which has issued a policy indemnifying the defendant against loss or damage is not a proper party to the litigation. (*Chamberlin* v. *City of Los Angeles,* 92 Cal.App.2d 330, 332 [206 P.2d 661] ; *Van DerHoof* v. *Chambon,* 121 Cal.App.118, 125-132 [8 P.2d 925].)  And the rule has been repeatedly stressed in this state that gratuitous references during a jury trial to the existence of insurance, either in argument or in the taking of testimony, will warrant the granting of a motion for mistrial or the reversal of a judgment (*Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517] ; *Citti* v. *Bava,* 204 Cal. 136 [266 P. 954] ; *Freeman* v. *Nickerson,* 77 Cal. App.2d 40, 54 [174 P.2d 688] ; *Rising* v. *Veatch,* 117 Cal.App. 404 [3 P.2d 1023] ; *Sischo* v. *City of Los Banos,* 26 Cal.App.2d 642 [80 P.2d 116, 1020] ; *Nichols* v. *Smith,* 136 Cal.App. 272 [28 P.2d 693] ; *Schellenberg* v. *Southern Calif. Music Co.,* 139 Cal.App. 777 [35 P.2d 156].)

But the appellants say that the foregoing rule does not apply to emancipated minors and that as they are "partially emancipated" it should not apply to them.

 A completely emancipated minor has the right to sue a parent for simple negligence. (*Martinez* v. *Southern Pac. Co.,* 45 Cal.2d 244, 253-254 [288 P.2d 868] ; 67 C.J.S. pp. 789-790; 165 A.L.R. 723; 19 A.L.R.2d 437.)

 " 'Emancipation' of a child is the relinquishment by the parent of control and authority over the child, conferring on him the right to his earnings and terminating the parent's legal duty to support the child.  It may be express, as by voluntary agreement of parent and child, or implied from such acts and conduct as import consent; it may be conditional or absolute, complete or partial. The emancipation of a minor is not to be presumed and must be proved . . ." (Schouler, "Marriage, Divorce, Separation and Domestic Relations," 6th ed., vol. 1, p. 897.) (See also 39 Am.Jur. pp. 702 et seq.) Section 211 of the Civil Code provides in part: "The parent, whether solvent or insolvent, may relinquish to the child the right of controlling him and receiving his earnings," and in the early case of *Lackman* v. *Wood,* 25 Cal. 147, 151, the power of a father to emancipate his minor child was recognized, the court saying:

". . . The child is freed by emancipation from parental control; he can claim his earnings thereafter as against his father, and is in all respects his own man.

"Emancipation is defined as 'An act by which a person, who was once in the power of another, is rendered free,' and the adjudged cases show that the doctrine of emancipation, as actually administered, is not less comprehensive than the definition."

Appellants do not claim complete, but only partial, emancipation, saying as to Joe Perkins that he was 17 years of age, normal and average in development for that age, allowed to make his own decisions, to manage his own affairs and to enter and leave the parental home at will, employed at various times and allowed to retain his earnings and to spend them as he wished, and as to Maurice Garnes that she was 20 years of age, physically and mentally mature, was allowed freedom to make her own decisions, manage her personal affairs, choose her own friends and enter and leave the family home as she might elect. It is conceded, however, by the appellants, as alleged in the pleading, that Maurice Garnes has always been an invalid, being blind, and that as a consequence she has never received sufficient education to permit her to earn a livelihood, that she is not capable of supporting or taking care of herself, that both minors were dependent on their mother for support, care and maintenance, and that Maurice Garnes was additionally dependent upon her, for nursing and personal care. It is not alleged in the pleading or asserted in their brief by appellants that Maurice Garnes is married or that she was emancipated in that way.

The fact that a minor is permitted to keep and spend his earnings for odd jobs done after school or in summer vacation does not establish his emancipation (*Aetna Life Ins. Co.* v. *Industrial Acc. Com.*, 175 Cal. 91, 94 [165 P. 15, L.R.A. 1918F 194]; *Boehm* v. *C. M. Gridley & Sons*, 187 Misc. 113 [63 N.Y.S.2d 587]; *Tande* v. *Vernon County*, 226 Wis. 602 [276 N.W. 359]); and the qualified independence allowed to both minors in this case seems to be about the same as that granted to the older "teen-agers" in the average American home today. Certainly there is nothing in the complaint showing a complete termination of the parental rights with respect to the control of the minors, or indicating that either child "did not occupy a subordinate position in the family unit." (*Martinez* v. *Southern Pac. Co., supra*, 45 Cal.2d 244, 253-254.)

■ "Partial emancipation" is not sufficient to permit a minor to sue a parent for tort based on simple negligence; complete emancipation is a prerequisite. (*Brumfield* v. *Brumfield,* 194 Va. 577 [74 S.E.2d 170, 173]; *Cafaro* v. *Cafaro,* 118 N.J. L. 23 [191 A. 472].)

■ Although unemancipated or "partially emancipated" minors cannot sue a parent for ordinary negligence, it has been decided by the Supreme Court since the filing of this appeal that they may institute such an action for a wilful or malicious tort committed by the parent. In the case of *Emery* v. *Emery, supra,* 45 Cal.2d 421, at page 430, it is said:

". . . While it may seem repugnant to allow a minor to sue his parent, we think it more repugnant to leave a minor child without redress for the damage he has suffered by reason of his parent's wilful or malicious misconduct. A child, like every other individual, has a right to freedom from such injury. Accordingly, we conclude that an unemancipated minor may sue his parent for a wilful or malicious tort, . . ."

Turning to the questions presented by the appeal relative to the wrongful death, as alleged in the fifth to eighth causes of action, we find that respondent contends that because section 377 of the Code of Civil Procedure by its terms authorizes a suit for wrongful death only by, or on behalf of, all of the heirs of a decedent, the children of decedent cannot sue the husband for his tort; involved in the argument is the elementary principle that one cannot be both plaintiff and defendant in a lawsuit (*Byrne* v. *Byrne,* 94 Cal. 576 [29 P. 1115, 30 P. 196]; 39 Am.Jur. 857) and the rule of thumb that when a necessary party plaintiff is joined as a defendant because of his refusal to sue, he is nevertheless treated as a plaintiff in the litigation for some purposes, such for example as on motions for change of venue. (*Donohoe* v. *Wooster,* 163 Cal. 114 [124 P. 730].)

■ It has frequently been held that the cause of action created by section 377 of the Code of Civil Procedure is "a joint one, a single one and an indivisible one" (*Gilmore* v. *Los Angeles Ry. Corp.,* 211 Cal. 192, 199 [295 P. 41]; *Salmon* v. *Rathjens,* 152 Cal. 290, 294 [92 P. 733]; *Estate of Riccomi,* 185 Cal. 458 [197 P. 97, 14 A.L.R. 509]; *Rabe* v. *Western Union Tel. Co.,* 198 Cal. 290, 299 [244 P. 1077]) and that "an action by some, but not all, of the heirs is not the action authorized under the statute" (*Watkins* v. *Nutting,* 17 Cal.2d 490, 498 [110 P.2d 384]).

A general statement of legal principle can seldom contain

all the qualifications and exceptions that arise in the factual combinations and permutations of litigation. ▮ In the situation here presented it is pertinent to ask whether our courts have held that strict compliance with the procedure specified in the section is jurisdictional or in the last analysis even mandatory in the sense that reversal of a judgment will necessarily follow a failure to comply with the requirements enumerated. The answer is clearly "No." For example, if the defendant does not raise the issue of nonjoinder by plea in abatement and the case goes to judgment with one heir only as a party plaintiff, the judgment will not be reversed (*Salmon* v. *Rathjens,* 152 Cal. 290, 294-297 [92 P. 733] ; *Knott* v. *McGilvray,* 124 Cal. 128 [56 P. 789].) And in *Groom* v. *Bangs,* 153 Cal. 456, 458 [96 P. 503], it was held that a person by merely alleging that he was husband of the decedent, and hence an heir, in the absence of timely application for abatement, could carry a case through to judgment without averring that he was sole heir and without naming the other heirs as parties. (See also *Brown* v. *Beck,* 63 Cal.App. 686, 695 [220 P. 14].)

It is a fair conclusion to draw from the adjudicated cases, that failure to follow strictly and rigidly the procedure prescribed in the section is not jurisdictional or even fatally erroneous in most situations.

▮ When it is said that an action for wrongful death is *joint* it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is *single* it is meant that only one action for the wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible it is meant that there cannot be a series of suits by heirs against the tort feasor for their individual damages. ▮ But while a "lump sum" verdict is required, the total recovery is the aggregate of the pecuniary loss of each of the heirs entitled to recover by reason of the death of the deceased—the damages of each are added to produce the total (*Estate of Riccomi,* 185 Cal. 458, 461 [197 P. 97, 14 A.L.R. 509] ; *Robinson* v. *Western States Gas & Elec. Co.,* 184 Cal. 401 [194 P. 39] ; *Simoneau* v. *Pacific Elec. Ry. Co.,* 159 Cal. 494 [115 P. 320].) And if an heir has not suffered pecuniary damage he cannot recover. (*Walker* v. *Etcheverry,* 42 Cal.App.2d 472, 476 [109 P.2d 385].)

■ If one of the heirs bringing suit for wrongful death was himself guilty of contributory negligence no recovery by him is permitted, but the remaining heirs may nevertheless recover their own damages in the action. In *Bowler* v. *Roos,* 213 Cal. 484, 485 [2 P.2d 817], the Supreme Court quotes with approval the following excerpt from the opinion in *Bowen* v. *Kizirian,* 105 Cal.App. 286, 290 [287 P. 570]:

" 'It is established that the failure of one of the plaintiffs to prove loss will not defeat recovery by another of the plaintiffs whose pecuniary loss has been proved. And this notwithstanding the fact that under the statute, as interpreted by our courts, only one action may be brought and only one judgment recovered. So far as the interpretation of this statute is concerned, no reason appears why the rule should be any different where the evidence discloses that one of the parties is not entitled to recover, not on account of a failure to prove pecuniary loss, but because of the intervention of another rule, such as contributory negligence. In *Estate of Riccomi,* 185 Cal. 458 [197 P. 97, 14 A.L.R. 509], . . . it is said that it would be absurd to hold that because two heirs must join in one action, the one proving damage must share the proceeds with the one suffering no injury. It would seem equally absurd to hold that an innocent party cannot recover because another party, with whom he is required by law to be joined as plaintiff, is not innocent.' " (See also *Flores* v. *Brown,* 39 Cal.2d 622, 631 [248 P.2d 922]; *Chinnis* v. *Pomona Pump Co.,* 36 Cal.App.2d 633, 640 [98 P.2d 560]; *Southern Pac. Co.* v. *Day,* 38 F.2d 958, 962.)

As the negligence of one of the heirs which proximately contributes to the wrongful death of a decedent bars him alone, is not imputable to the other heirs and does not prevent their recovery or mitigate their damages, it logically follows that the negligence of an heir which solely causes the wrongful death should not defeat the suit of the innocent heirs. In this case he is necessarily a party to the action; he cannot, of course, recover any damages against himself and he would not be entitled to share in the award, if any.

■ But can the unemancipated minors sue their stepfather for simple negligence resulting in the death of their mother? It would seem that the reasons which forbid such a suit for the personal injury of a plaintiff persist in all their vigor to prevent an action for the wrongful death of their mother. Appellants argue that this is not so because section 377 of the Code of Civil Procedure makes no such exception

by its terms. A sufficient answer to this contention is the parallel fact that section 3281 of the Civil Code providing that: ''Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages'' contains no express exception denying unemancipated minors the right to sue their parents. We conclude that the rule that unemancipated minors cannot sue a parent, or one *in loco parentis,* also applies to wrongful death actions based on negligence (*Strong* v. *Strong,* 70 Nev. 290 [267 P.2d 240, 269 P.2d 265]).

As to the causes of action alleging that the mother of the plaintiffs came to her death by reason of the wilful misconduct of defendant, it seems clear that the minor plaintiffs have the right to sue for the reasons set forth in *Emery* v. *Emery, supra,* 45 Cal.2d 421, 430.

We conclude that the order sustaining the demurrers was correct as to the first, third, fifth and seventh causes of action and erroneous as to the second, fourth, sixth and eighth causes of action. However, as the rights of an unemancipated minor (second and sixth causes of action) and a ''partially emancipated'' minor (fourth and eighth causes of action) are identical, the second and fourth counts and the sixth and eighth counts have exactly the same legal effect, and the fourth and eighth causes of action are to all intents and purposes simply duplications. In the interest of sound judicial administration, we shall not disturb the trial court's ruling as to the fourth and eighth counts, as the existence of the allegations contained in them relative to partial emancipation, although ineffective surplusage, might lead to prejudicial confusion through the introduction of evidence relating thereto at the trial.

Although there are eight causes of action and demurrers to each count, some of which were correctly sustained without leave to amend, there is only one judgment and it must necessarily be reversed because of the errors pointed out in the foregoing opinion. (*Bank of America* v. *Superior Court,* 20 Cal.2d 697, 701 [128 P.2d 357].)

The judgment is reversed, and upon the going down of the remittitur the trial court is directed to overrule the demurrers to the second and sixth causes of action.

Barnard, P. J., and Mussell, J., concurred.